Ruffin, C. J.
 

 If the heirs at law be not entitled, it must be by force of a republication of the will, or the operation on it of the act of 1844, ch. S3. For, nothing was better settled under the former statute of wills, than that land purchased after the making of the will did not pass by it, however general the terms of the devise might be. The reason was, that a devise isa conveyance and therefore must operate on a specific subject. For the same reason, if a devise failed by the death of a devisee before the testator, the land did not fall into the residue but went to the heir at law. For, although land may pass under a residuary clause of a will, as well as personalty, yet there is this difference in the operation of that clause on realty and personality ; that it takes in every thing
 
 *290
 
 of the latter kind that is not well disposed of, whereas, in respect to the former, it takes in only what is not before given away in the will — for each gift of land, whether so in terms or not, is in law' specific, and one cannot be enlarged by the failure of the other, unless there be a limitation over in the event that happened.
 
 Morris
 
 v,
 
 Underdon,
 
 Willes Rep. 293.
 
 Howe
 
 v.
 
 Dartmouth,
 
 7 ves. 137. It was one purpose of the act of 1844 to alter the law in that point. The question, then, really is, from what time this will operated.
 

 Nothing appears in the probate of the will to show', that the Court of probate undertook to determine that question ; and, as far as it is stated, it was proved as a will speaking in respect of the land from its date, and not by force of a republication. In the case of
 
 Jiggetts
 
 v.
 
 Maney.
 
 1 Murph. 258, it w’as held that a will of this kind, unattested and written by the testator and deposited, among his valuable papers, did not operate from his death, but from its date. It was strongly argued, that, as the dale was an immaterial part of an instrument, the publication was to be referred to the period at w’hich the will became of force. But the Court thought, that the publication was to be refe-rred to its date, and that the preservation of it by the testator among his valuable papers was not a republication of it from day to day as long as he lived, but only the recognition of it as a subsisting will, in the same manner as his keeping it would be regarded, if it had been an attested will. The same principle seems to apply with equal force to what was done in this ease — if that question now be open for the decision of the Court, as we suppose it to be. We do not mean to say, if a testator deliver his holograph will of a prior date to a person, for safe keeping, in such terms as show an intention,that it shall speak as a will from that time, that such acts and declarations may not amount to a publication or republication then. How that would be, w’e do not at
 
 *291
 
 present undertake to consider, though we suppose it would amount to publication. But we conceive, that if a publication can be thus shown, there must be a plain expression of purpose, that what is then said and done should be a republication ; by which we mean, that the party meant the instrument to operate as an instrument of that date, and not of that which it leave upon its face, it requires strong proof of the intention, because it is in apparent conflict with the instrument itself, which he is taking the means of preserving in its original form, and which, therefore, it is to be supposed,
 
 prima facie,
 
 at least, he meant to operate according to its form. Here the case states simply a delivery by the testator to another person of a number of valuable papers for preservation during an absence of uncertain duration in a distant country, and that among these papers was this will. But it does not seem, that a single word was said of the will in particular, or that the friend ever knew, that one of the papers was a w.ll. It was in truth nothing more than a mode of preservation of convejmnces, securities, and this will in the strong box of a friend, instead of his own, and is barely a recognition of the papers as a subsisting will, without any reference to the time from which its subsistence was to be reckoned, but leaving it to speak for itself on that head. It is nomore a republication of this, than it would have been of an attested will. No doubt a codicil would be a republication, and, if that had been executed according to the act of 1784, in either way, it would have had that effect. But that would be an act of an explicit character ; though it was once much contested, whether a codicil would be a republication of a previous will. In the case here, there is nothing whatever, by which more can be collected, than that the party treated this paper as a will in 1847 ; but, without something more, it must be taken that he treated it, not only as then being so, but
 
 *292
 
 as having been so from the time he made it. If it had been without date, it would, necessarily, be otherwise; but as it is, the Court holds, that the instrument is, as a will of lands, to be referred, as to the period from which it operates, in respect oí its publication merely, to the date of it.
 

 It was further contended for the defendant, that the case is governed by the 3rd section of the Act of 1S44, which enacts, that every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect, as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. The rule of construction laid down by the statute is clear enough ; but still it remains to be ascertained, to what wills it is to be applied. Undoubtedly, it has no application to wills before consummated by the death of the maker. The Legislature did not mean to touch vested rights by changing the meaning, which the law gave to an instrument at the time it was executed and went into operation. The question is, whether it was intended to change the meaning and legal effect of a provision, from what it was, when it was made, into something else, because the party lived to the time at which the Legislature said that such provisions have a meaning different from that imported by the instrument at its inception
 
 1
 
 We conceive that it was not so intended ; and that the construction there prescribed applied only to wills thereafter to be executed or published. The case of
 
 Salter
 
 v.
 
 Bryan,
 
 4 Ired. 494, it is true, is not an authority in point, because the statute, on which the question then arose, used the words, “made after” such a day. But that only made the point the clearer, because it expressed what, upon all just rules of interpretation, would be implied without it. It is true, that in
 
 The matter of Bleach's will,
 
 4 McCord 39, it was held that a will executed properly, according to the law existing at its execution, is not good, unless, it
 
 *293
 
 be also in the form prescribed by the law existing at the death of the maker, and that decision is noticed without disapprobation in the opinion given in the case in this Court. But that was merely an incidental remark, accompanying the observation, that the case was distinguished from that before the Court, inasmuch as our statute used the words ’‘made after.’’ while that in South Carolina did not. We had no concern with that case then, except to distinguish ours from it. But upon an examination of that case, we own the reasoning does not satisfy our minds, and that both on principle and authority we adopt the opposite conclusion. The English Statute of Frauds enacted, that “from and after the 24th of June, 1677, no action shall be brought to charge any person upon any agreement, &e„ unless such agreement be in writing and in another section it enacted in the same words, that “from and after the 24th of June, 1677, no devise of land should be good, unless,” &c. An action was brought after the statute upon a parol agreement before the statute, and it was held that it would lie ; for, although the power of the Parliament extended that far, the Court said, it would not be presumed, that the Act had a retrospect to take away an action to which the plaintiff was entitled ; and the Court went on to say “if a will had been made before the 24th of June, and the testator had died afterwards, yet the will had been good, though it had not been in pursuance of the statute.”
 
 Gilmore
 
 V.
 
 Shooter.
 
 This case is reported in
 
 2
 
 Mod. Rep. 310, and by several other reporters of that day, and we believe, has never been seriously questioned in England. On the contrary, it has been approved and its principle acted on
 
 b/
 
 Haedwickb in several cases which arose under similar provisions in the Mortmain acts.
 
 Atto. Gen’l
 
 v.
 
 Andrews, 2
 
 Ves. 224;
 
 Ashburnham
 
 v.
 
 Broadham, 2
 
 Atk. 36; and
 
 Atto. Gen’l
 
 v.
 
 Lloyd, 3
 
 Atk. We conceive that thos decisions are precisely in point here. For, although the Stat.
 
 21),
 
 
 *294
 
 Charles 2nd fixes a time, June 24th, 1677, and ours is silent in that respect, yet it is precisely the same thing. Because the English Act does not say do will made after June 24th shall be good, but that after that time no devise shall be good, unless the will be written, signed by the testator, and attested as prescribed. It was therefore held in the manner it was, upon a principle of sound construction, as if the word “made” had been in the Act, because the Court presumed the Legislature had in view only such instruments as had their origin after the statute. Now, our Act, though upon its face it fixes no time expressly for the execution of the wills to which its rule of construction is to a pply,
 
 yet, by the
 
 general law, it is to be supposed to have in it a provision, that it shall operate thirty days after the rise of the Assembly ; aud with such a provision it would, in this respect, be exactly like the Stat. 29, Chas. II. There is another observation on the Act of 1844 that seems decisive of this question. The different sections are not so many independent provisions ; but, being upon the same subject, they are to be construed together. Then if it is asked, for example, to what wills the rule of construction prescribed in the third section refers, it is plain', we think, that it refers to wills of the same kind, in respect to the period of their execution, as those spoken of in the proceeding parts of the act. Now, the first section authorises devises of certain interests not before capable of being devised, including real estate acquired subsequently to the execution ; and the language of that section clearly' makes it Operate prospectively only7. It is, “ that it
 
 shall
 
 be lawful for any testator” &c; and “that the power,
 
 hereby given, shall extend”
 
 «fee. In fine we are satisfied, that when a party used words, to which the law annexed a certain sense at the time' they were used, it was not the intention of the Legislature to say, that, by the party’s living to a certain day, it should be understood, that he
 
 *295
 
 used them in a different sense. We think the enactment was altogether prospective; and, therefore, deem the judgment of the Superior Court erroneous.
 

 Per Curiam. Judgment reversed and
 
 venire de novo.