The bill is filed for the purpose of obtaining the advice and directions of the Court as to how the plaintiff shall act in certain matters of difficulty, which have arisen in executing the will of his testator, the late William Boylan.
1. It appears from the will that the plaintiff and three other gentlemen, all of whom are residents of this State, and Henry Vaughan, of the State of Mississippi, are appointed executors, and it is provided that no security shall be required of them, and that they shall not be liable for the acts, negligences and omissions of each other. The plaintiff alone has qualified as executor in this State, and it is understood that Henry Vaughan has qualified as such in the State of Mississippi. The testator left a large estate of both real and personal property, consisting of lands, slaves and live stock, situate in both of the above named States — large amounts of bank and railroad stocks in this State, and also a large amount of bonds, notes and other evidences of debt due from persons residing in this State and the States of Louisiana and Mississippi. The pecuniary legacies given in the will amount to about the aggregate sum of $125,000, and the legatees, who are numerous, reside some in this *Page 285 
State and others out of it. The executor in this State will not have assets in his hands sufficient to satisfy all the pecuniary legacies, without collecting the mounts due from debtors residing abroad, and he desires the instruction of the Court as to whether it is his duty to prove the will and take out letters testamentary in any other than this State, for the purpose of collecting the debts which may be due (367) from debtors residing there.
Our opinion is, that he is not. The testator has settled that question himself by appointing an executor residing abroad; for such executor must be supposed to have been nominated for the express purpose of attending to the collection of debts due there. And it aids this supposition that we find the executors excused from all responsibility for the acts, negligences and omissions of each other.
2. The second inquiry is whether, if the plaintiff can not collect money enough to pay off all the pecuniary legacies, he must pay out what he haspro rata among all the legatees, or may he select and pay whomsoever he pleases.
We can not discover anything in the will which gives one legatee any preference over another. All have equal claims upon the executor, and in case of a deficiency of assets in his hands, he must scale the legatees prorata.
3. Interest in this case is, we think, to be calculated on all the pecuniary legacies, from the testator's death. All the legatees are his wife's children, grandchildren and a great-grandchild, and the assets, or nearly all the assets, out of which they are to be paid consists of debts due the estate, which are bearing interest; see Williams v. Falcon, ante, 235.
4. The testator clearly shows by his will that he understood the distinction between children and grandchildren. The general rule, therefore, must prevail, that in the division of the residue, directed to be made among his children, the testator's grandchildren and great-grandchild can not be included; Ward v. Sutton, 40 N.C. 421.
5. Laws 1860, chapter 37 (see Laws 1860, first session), forbids the emancipation of David Matthews, his wife and daughter Adelaide. The will was made before the passage of the act, but the testator did not die until after that time. The act declares that no slaves shall hereafter be emancipated by will, deed, or any other writing which is not to take effect in the lifetime of the owner. The object of the law being to prevent the emancipation of slaves by will, or any other instrument which is to operate in the nature of a will, (368) we can see no reason why it may not operate upon a will made before its passage, where the testator dies afterwards, as well as one made subsequent to the time of the enactment. In this respect, it differs from a statute made for the purpose of changing the construction *Page 286 
of a will, such as the Act of 1844, chapter 88 (see Rev. Code, ch. 119. sec. 6), which declared that a will should be construed to speak, with respect to the real and personal estate comprised in it, as if it had been executed immediately before the death of the testator. Such a statute shall not operate upon a will made before its passage, because the testator, when he made it, is supposed to have used language with reference to that law as it then stood, and the Legislature will not give to such language a different meaning. This seems to have been the ground upon which Battle v.Speight, 31 N.C. 288, was decided. It is manifest that the principle of the decision does not apply to the present case.
6. The executor asks what is to be done with the slaves in case they can not be emancipated. The act itself answers the question. It says, expressly, that they shall go to the next of kin, and shall not pass under any residuary clause of the will.
7. The most difficult enquiry propounded by the executor is that which relates to the devise and bequests, in trust, for the testator's grandson, John S. Boylan, contained in the eighth clause of the will, taken in connection with the bequest, in trust, for him to be found in the first codicil. The gift in the will is to the testator's daughter Catharine, of one-half of a tract of land in the State of Mississippi, many slaves, and ten thousand dollars in money, in trust for the said grandson during his life, with certain limitations over. The codicil is as follows: "I hereby revoke so much of my will as disinherits my grandson, John S. Boylan, and do hereby give and bequeath to my son John H. Boylan, ten thousand dollars, in trust for my said grandson, John S. Boylan, the interest to be paid to him annually during his life," with a limitation to his children, should he leavy any, and if not, then to fall into the (369) residue of the estate. John S. Boylan claims under both the will and the codicil, while the other devisees and legatees contend that the bequest in the codicil is a substitution for what is given in the will, or that at all events it can not be cumulative.
This question has been argued with much zeal and ability by the counsel on both sides, and after much reflection and some hesitation, we have come to the conclusion that the bequest in the codicil is not a revocation of the devise and legacy given in the will, but is itself void as having been made under an entire mistake of facts. In coming to this conclusion, we have felt ourselves at liberty to take into consideration the parol testimony, so far as it tends to show the state of the testator's family, the condition of his estate, and his feelings towards his grandson, J. S. Boylan, at the time when the will and codicil were respectively executed; see Bivens v. Phifer, 47 N.C. 436. The will bears date 18 June, 1858, while the codicil appears to have been made on 2 July, 1860. In the interval between those dates, the grandson, John *Page 287 
S. Boylan, had, by his evil and dissipated conduct, so seriously incurred the displeasure of his grandfather that he declared his intention to disinherit him. The counsel for John S. Boylan contends that the devise and bequest in the will is not revoked by the codicil, because, though it may appear that the testator intended, at one time, to revoke the gift to his grandson, and thereby disinherit him, yet such intention had never been carried out in any manner recognized by the law as sufficient for that purpose. He then insists that the legacy in the codicil is a plain bequest of the sum therein mentioned, and there is nothing to prevent its taking effect. On the other hand, the counsel for the other defendants argue that the codicil shows a plain intention in the testator to disinherit his grandson, and the great rule which governs in the construction of wills, to wit, that the intent must prevail, no matter in what language it may be expressed, requires the Court to give full effect to it. In support of this argument, besides the other cases, Postmaster-Generalv. Early, 17 Curtis, 86, decided by the Supreme (370) Court of the United States, was referred to, wherein it was held that an act of Congress which gave jurisdiction to a certain Court over certain subjects, concurrent with another Court, thereby conferred a jurisdiction upon the latter Court, which it had never had before. That may be so, but the cases are not parallel. If a testator were, by a codicil, to bequeath to A a thousand dollars, that being the sum which he had by his will given to his brother B, then B might claim a legacy of that sum, though it had not been given to him in the will. The language here supposed would be very much like that in the case cited by the counsel. But the words of the codicil in the case now before us are very different. The testator says, "I revoke so much of my will as disinherits my grandson, John S. Boylan," and we do not see how this can mean the direct reverse of the plain import of the language. If a previous codicil had been found, in which the testator had disinherited his grandson, a revocation of that by a second codicil must have had the effect to restore the gift of the real and personal estate contained in the will. We are of opinion, then, that the devise and bequest in the will must stand, but are satisfied that the testator labored under a mistake of fact in supposing that he had disinherited his grandson, and that the legacy given by the codicil was the consequence of that mistake; considering the state of alienated feelings in which the parties stood towards each other at the time, and the cause which had produced it. We can not for a moment suppose that the testator intended to give his grandson an additional legacy. That legacies given under a false impression as to the existence or non-existence of a fact will be null and void, is shown by many cases; see Wms. on Ex'rs, 141, et seq.
PER CURIAM. Decree accordingly. *Page 288