Ruffin, C. J.
 

 The lessor of the plaintiff claimed title under a Sheriffs sale and deed as follows : He produced the record of a suit and recovery, in the County Court of Rutherford, by Drury Scruggs against Joseph Roach, William H. Green and Ambrose Roach, at July Term, 1841. The suit began by a warrant before a Justice of the Peace in favor of Scruggs against Joseph Roach and Green, and on the 23d May,
 
 1840,
 
 judgment was rendered thereon for forty dollars, with interest thereon from the 25th December, 1839, until paid, and eighty cents' cost; which was staid by Ambrose Roach. A
 
 fieri facias
 
 was issued thereon in January, 1841, which was levied on the premises in dispute, as the land of Joseph Roach, on the 4th May, 1841, and returned to the next County Court in July, 1841, and also the copy of a notice to Joseph Roach from the Constable, of his intention to return the same; and at that term a minute was taken by the Clerk, that the judgment before the magistrate above recited is readjudg-ed to the plaintiff and confirmed by the Court, and the land returned as levied on,
 
 condemned,
 
 and ordered to be sold to satisfy the same with costs. A
 
 venditioni exponas
 
 then issued, omitting the name of Green,' on which the Sheriff returned a sale of
 
 the
 
 land to Achilles Dreshour for five dollars, and, subsequently, the plaintiff by leave of the Court, sued out writs of
 
 fieri ¿facias,
 
 and from time to time, up to November, 1842, for the balance due; and he then took out one against the goods and chattels, lands and tenements of Joseph Roach, Ambrose Roach and Wil
 
 *427
 
 liam H. Green, commanding the Sheriff to make the sum of forty dollars, with interest thereon, from the 25th December, 1839, which Drury Scruggs recovered against them, together with the further sum of three dollars and eighty-five cents; and thereon the Sheriff offered' the premises again for sale, and they were purchased by the lessor of the plaintiff, which was returned on the writ to February Term, 1842, and the Sheriff afterwards made him a deed. It appeared further from the record, that, in entering the judgment at July Term, 1841, the name of William H. Green was omitted as one of the defendants, and that it was afterwards inserted by order of the Court, at April Term, 1842, on the motion of the plaintiff to amend. The defendants then gave in evidence the record of a recovery by Alfred McKinney against the same Joseph Roach, and that under a
 
 fi. fa.
 
 -thereon, the defendant became the purchaser of the premises in 1845, and took a deed from the Sheriff.
 

 The counsel for the defendant insisted, that the plaintiff could not recover ; first, because there was no judgment, to support the writ of execution under which the lessor of the plaintiff purchased; and, secondly, because of a variance between the judgment, if there be any, and the
 
 ven-ditioni exponas
 
 in the omission of Green’s name as a defendant, and in stating the costs, and in other respects. But the Court refused to give instructions on these points in favor of -the defendant, and after a verdict and judgment against him, he appealed.
 

 The Court concurs in the opinion of his Honor. According to the loose mode of making entries, which the profession for their own ease tolerate, the Courts are obliged to hold, where the judgments are drawn collaterally in question, that the minutes of the Clerk stand for the judgment, and that a proper, judgment, such as it should be if duly drawn up, is to be presumed. The security of suitors, offi
 
 *428
 
 cers and purchasers imposes on the Courts that rule, as an absolute necessity. But even that is not material to the plantiff’s recovery, since he is not obliged to show a judgment at all in this case, much less one to which the execution was in exact conformity, as was held in
 
 Rutherford
 
 v.
 
 Raburn,
 
 10 Ire. 144. The counsel for the defendant contends against the correctness of the case, — considering it as laying down the doctrine that the act of 1848, c. 53, operates retro-actively, and that such operation is judicially sustainable, though it affect existing rights. It is said, that, here, for example, the defendant purchased, when there were such variances and defects in the judgment and executions, under which the lessor of the plaintiff had before purchased, as were fatal to his title, and that the defendant was induced by a knowledge of that fact to lay out his money in the subsequent purchase, and that, having then got the title, he holds it secure from future legislation. Undoubtedly the Court would hold, were the language of the ] statute doubtful in respect of its re-ti'ospective as well as prospective operation, that it was intended to be the last only, and, were the language unequivocally retro-active, the Court would be obliged to hold further, that, in that respect, the legislature had transcended its constitutional power. The legislature cannot interfere with vested rights of
 
 property.
 
 — Hoke v.
 
 Henderson,
 
 4 Dev,
 
 1.
 
 But this seems clearly to the Court not to be a case of this kind. The statute in question is altogether prospective in its terms and operation,
 
 and,proprio
 
 vigore, does not apply to the controversy between these parties. Neither claims under the enactment of the statute. The question between them is of a different nature entirely. It is, whether at the common law and without any statute on the subject, a purchaser at a Sheriff’s sale is bound to sustain the execution, by showing a judgment, with which it accords, or whether he does not get a good title under
 
 *429
 
 the execution, which justifies the Sheriff, without producing a judgment at all. Now upon that question there were conflicting judicial opinions and resolutions. Prior to the year 1812, it had been immemorially held, that, except in some special instances, a purchaser was not obliged to show a judgment, but the execution was sufficient for him. But in that year it was decided otherwise in the case of
 
 Hamilton
 
 v.
 
 Adams,
 
 2 Mur. 161, and subsequently it had been held as a corrollary, that the judgment and execution must be in exact accordance. Now this new doctrine had never been adopted in the Common Law Courts of our sister States, had never been satisfactory to the Profession here for the reasons given in
 
 Rutherford
 
 v.
 
 Raburn,
 
 and proved with more experience to be more and more inconvenient. When, therefore, a case arose, in which the question was again presented, as one at thé common law, it was necessary to be considered by the Judges, to which class of adjudications they should submit, as evidence of the law. Now it is true, that they might probably have continued in the course of their immediate predecessors, as they had before done, but for the aid derived from discovering, in the act of 1848, that a sense of the inconvenience and mischief of the new rule had reached the community generally, and through it the legislature also, and that, to some purposes at least, a legislative remedy had been enacted. In that state of things the Court not only felt at liberty but bound to recur to principle, in deciding the question, which led them, both upon the reason of the thing and from respect to the legislative policy, to adopt the ancient decisions as being still the law of the country. That did not at all interfere with vested rights by any new law. It simply determined, that, by the old, which is held to be the existing, law, the party had no rights. It is a case merely of a change in judicial opinions, as to what is the law. The rights of
 
 *430
 
 persons, dependant on the question, when
 
 Hamilton
 
 v.
 
 Adams
 
 was decided, were affected principally, as 'those existing at the time of
 
 Rutherford
 
 and
 
 Raburn.
 
 Indeed there might be the same objection urged against overruling at present this last case since it would affect the rights of persons, who, in the mean time, have acted on the faith of it as law: a consideration always extremely grave in the mind of a Judge and leading him to follow precedents rather than unsettle the law or shake titles, as long as he sees he can do so without producing more evils than overruling them can possibly bring about; but it is inseparably incident to human tribunals, that opinions should vary upon questions, what is the law, and that the course of adjudication at one period should be modified at another, and men must deal subject to that degree of uncertainty, as to the rule of law on a particular point, an uncertainty, which probably pervades our country, and that from which we derive the elementary principles of our law and the model of our judiciary, less than any others that ever existed.
 

 The Court concludes, therefore, that the variances insisted on are not material, and would not invalidate the title of the lessor of the plaintiff in fact. However, the most important difference no longer exists, as it was removed by the amendment. It was argued, indeed, against that also, that it affected rights, and therefore its operation should be accordingly restrained. But the argument must fail, since it goes to the whole power of amendment, as the very necessity for amending arises out of the invalidity of the proceeding unless amended, and every amendment must
 
 therefore affect the
 
 rights
 
 of
 
 persons. But it is among the most beneficial powers of Courts, intended and usually exercised to further justice and to sustain what has been done under the supposed authority of the law. Every person must be’ therefore understood to act, in such cases as the present, with a knowledge that the Courts can,
 
 *431
 
 and in cases deemed proper by them, will amend their records and process, so as to promote justice as far as they can do so. consistently with the truth. Besides, the propriety of an amendment cannot arise collaterally in another Court, as the record in the present shape is to be received as conclusively speaking the truth.
 

 Pee Cukiam. Judgment affirmed.