IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-261

Filed 12 September 2023

Wake County, No. 21 CVS 7438

DUSTIN MICHAEL MCKINNEY, GEORGE JEREMY MCKINNEY and JAMES ROBERT TATE, Plaintiffs,

v.

GARY SCOTT GOINS and THE GASTON COUNTY BOARD OF EDUCATION, Defendants.

Appeal by Plaintiffs and Intervenor State of North Carolina from an order entered 20 December 2021 by Judges R. Gregory Horne and Imelda J. Pate, with Judge Martin B. McGee dissenting, in Wake County Superior Court. Heard in the Court of Appeals 6 June 2023.

*Lanier Law Group, P.A., by Donald S. Higley, II, Robert O. Jenkins, and Lisa Lanier, for Plaintiffs-Appellants.*

*Attorney General Joshua H. Stein, by Solicitor General Ryan Y. Park, Deputy Solicitor General Nicholas S. Brod, Solicitor General Fellow Zachary W. Ezor, and Special Deputy Attorney General Orlando L. Rodriguez, for Intervenor-Appellant State of North Carolina.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Elizabeth Lea Troutman, Robert J. King, III, Jill R. Wilson, and Lindsey S. Barber, for Defendant-Appellee Gaston County Board of Education.*

*No brief filed by Defendant-Appellee Gary Scott Goins.*

*Fox Rothschild LLP, by Troy D. Shelton, for Amici Curiae Student Victims of Sexual Abuse.*

*Troutman Pepper Hamilton Sanders LLP, by Joshua D. Davey and Mary K. Grob, for Amicus Curiae Roman Catholic Diocese of Charlotte, North Carolina.*

*Wilder Pantazis Law Group, by Sam McGee, for Amicus Curiae CHILD USA.*

*Tharrington Smith, L.L.P., by Deborah R. Stagner, for Amicus Curiae North Carolina School Boards Association.*

*Nelson Mullins Riley & Scarborough, LLP, by Lorin J. Lapidus, G. Gray Wilson, Denise M. Gunter, and Martin M. Warf, and Bell, Davis & Pitt, P.A., by Kevin G. Williams, for Amicus Curiae Young Men's Christian Association of Northwest North Carolina d/b/a Kernersville Family YMCA.*

RIGGS, Judge.

Plaintiffs Dustin Michael McKinney, George Jeremy McKinney, and James Robert Tate, along with Intervenor-Appellant State of North Carolina, appeal from an order entered by a divided three-judge panel in Wake County dismissing Plaintiffs' complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The majority below dismissed Plaintiffs' complaint on the rationale that the Sexual Assault Fast reporting and Enforcement Act (the "SAFE Child Act")—which revived Plaintiffs' civil claims for child sexual abuse after expiration of the statute of limitations—was facially unconstitutional as violating due process rights protected by the "Law of the Land" clause in Article I, Section 19 of the North Carolina Constitution. *See* 2019 N.C. Sess. Laws 1231, 1235, ch. 245, sec. 4.2.(b) ("Effective from January 1, 2020, until December 31, 2021, this section revives any civil action for child sexual abuse otherwise time-barred under G.S. 1-52 as it existed

immediately before the enactment of this act."); N.C. Const. art. I, § 19 ("No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.").

Defendant Gaston County Board of Education (the "Board")—who, per the complaint in this case, failed to protect the children in its care from a sexually abusive employee over a period of years—asks us to elevate a purely procedural statute of limitations defense into an inviolable constitutional right to be free from any civil liability for whatever misdeeds would be provable at trial. But affording all statutes of limitation that exceptional status is nowhere required by the constitutional text, nor is it mandated by the precedents of our Supreme Court. Because adopting the Board's position would require us to strike down as unconstitutional a duly enacted statute of our General Assembly and disregard the narrowly crafted legislation designed to address a stunningly pressing problem affecting vulnerable children across the state, we decline to convert an affirmative defense into a free pass for those who engaged in and covered up atrocious child sexual abuse. After careful review, we reverse the trial court and remand for further proceedings not inconsistent with this opinion.

## I.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

**A. Underlying Abuse of Plaintiffs**

The allegations of the complaint, taken as true for purposes of review at the 12(b)(6) stage, establish the following:

Plaintiffs were all high school students and members of the East Gaston High School wrestling team at different times during the mid-1990s and early 2000s. All were coached by Defendant Gary Scott Goins, who physically and sexually assaulted each of the boys during their pre-teen and/or teenage years. Defendant Goins desensitized his victims to sex, used foul language, and exposed them to vulgarity and pornography. He further engaged in acts of physical violence, psychological harm, and sexual abuse. On trips to tournaments and other team events, Defendant Goins precluded Plaintiffs from travelling or rooming with their parents so that he could sexually assault them without raising suspicion. Plaintiffs suffered lasting psychological harm—including post-traumatic stress disorder, anxiety, depression, and/or substance abuse issues—as a result of Defendant Goins' illegal acts.

The Board, Defendant Goins' employer, received numerous complaints concerning his physical abuse of wrestlers under his tutelage. The Board, however, made no corrective action in response to these reports, electing instead to dismiss them after minimal investigation. Nor did the Board properly supervise Defendant Goins' activities to protect Plaintiffs from his abuse, including while in school facilities, travelling on school vehicles, and during overnight trips sanctioned by the Board.

In 2014, Defendant Goins was convicted of the following offenses in connection with his sexual abuse of wrestlers on the East Gaston High School wrestling team: (1) two counts of statutory sexual offense; (2) six counts of taking indecent liberties with a minor; (3) four counts of taking indecent liberties with a student; (4) three counts of sexual activity with a student; and (5) two counts of crimes against nature. *State v. Goins*, 244 N.C. App. 499, 511, 781 S.E.2d 45, 54 (2015). He was sentenced to a collective minimum term of 34.5 years for his crimes, and his conviction and sentences were upheld on appeal. *Id.*

**B. Statute of Limitations and the SAFE Child Act**

Under the statute of limitations then in effect, Plaintiffs had three years from their eighteenth birthdays to bring civil suits against Defendants for the torts arising out of their sexual abuse. *See* N.C. Gen. Stat. § 1-17 (2007) (providing that persons under the age of eighteen may generally pursue claims "within the time limited in this Subchapter" upon reaching the age of majority); N.C. Gen. Stat. § 1-52 (2007) (establishing a three-year statute of limitations for assault, battery, and false imprisonment). None of Plaintiffs brought civil suits against Defendants for these torts within three years of their eighteenth birthdays, with the latest of the claims expiring in 2008.

The North Carolina General Assembly passed the SAFE Child Act unanimously on 31 October 2019, and it was signed by the Governor a week later. 2019 N.C. Sess. Laws 1231, 1239, ch. 245, sec. 9(c). Among the many substantial

statutory changes in the SAFE Child Act were revisions to the statute of limitations governing Plaintiffs' claims against Defendants, including the following "Revival Window" provision: "Effective from January 1, 2020, until December 31, 2021, this section revives any civil action for child sexual abuse otherwise time-barred under G.S. 1-52 as it existed immediately before the enactment of this act." *Id.*, 1235, ch. 245, sec. 4.2(b). This change by the legislature mirrored scientific developments and greater understanding by lawmakers from 2000 to the present[1] that child sex abuse victims frequently delayed disclosure of their traumas well into adulthood and suffer lifelong impacts to their physical, mental, and behavioral health. *See* Melissa Hall & Joshua Hall, *The Long-Term Effects of Childhood Sexual Abuse: Counseling Implications*, AM. COUNSELING ASS'N VISTAS ONLINE, 2-5 (2011), https://www.counseling.org/docs/disaster-and-trauma_sexual-abuse/long-term-effects-of-childhood-sexual-abuse.pdf; Ramona Alaggia et al., *Facilitators and Barriers to Child Sexual Abuse (CSA) Disclosures: A Research Update (2000-2016),* 20(2) TRAUMA, VIOLENCE, & ABUSE 260, 276 (2019), https://journals.sagepub.com/doi/pdf/10.1177/1524838017697312; CHILD USA, *Delayed Disclosure: A Factsheet Based on Cutting-Edge Research on Child Sex Abuse,*

---

[1] Connecticut, California, and Delaware were the first three states to revive civil claims under expired statutes of limitations for child sexual abuse in 2002, 2003, and 2007, respectively. *2023 SOL Tracker*, CHILD USA, https://childusa.org/2023sol/ (last visited June 27, 2023). Twenty-three states and three territories followed suit between 2010 and 2023. *Id. See also* Brief of *Amicus Curiae* CHILD USA in Support of Plaintiffs-Appellants Urging Reversal of the Decision Below, 17-22, *McKinney v. Goins*, COA22-261 (N.C. Ct. App. Apr. 19, 2023).

4 (March 2020), https://childusa.org/wp-content/uploads/2020/04/Delayed-Disclosure-Factsheet-2020.pdf; Ctrs. for Disease Control, *Preventing Child Sexual Abuse*, 1 (2021), https://www.cdc.gov/violenceprevention/pdf/can/CSA-Factsheet_508.pdf (collecting research from the late 1990s through the late 2010s).

**C. Plaintiffs' Suit and the Board's Facial Constitutional Challenge**

Relying on the SAFE Child Act's Revival Window, Plaintiffs filed suit against Defendants on 2 November 2020 in Gaston County Superior Court for: (1) assault/battery; (2) negligent hiring, retention, and supervision; (3) negligent infliction of emotional distress; (4) intentional infliction of emotional distress; (5) constructive fraud; (6) false imprisonment; and (7) punitive damages.[2] The Board filed an answer and counterclaim on 27 January 2021, specifically asserting that the complaint must be dismissed because the Revival Window "is facially unconstitutional" and the claims were time-barred by the applicable statute of limitations. The Board later filed a 12(b)(6) motion to dismiss on this same basis, as well as a motion to transfer the action to a three-judge panel of the Superior Court of Wake County. *See* N.C. Gen. Stat. § 1-267.1(a1) (2021) ("[A]ny facial challenge to the validity of an act of the General Assembly shall be transferred pursuant to G.S. 1A-1, Rule 42(b)(4), to the Superior Court of Wake County and shall be heard and determined by a three-judge panel of the Superior Court of Wake County[.]").

---

[2] Defendant Goins was later dismissed from the lawsuit without prejudice and is therefore omitted from further discussion in this opinion.

Plaintiffs and the Board subsequently filed a joint motion to transfer and stay the remainder of the action, and the Gaston County Superior Court granted that motion on 17 May 2021. Chief Justice Paul Newby of the Supreme Court of North Carolina subsequently appointed Superior Court Judges Martin B. McGee, R. Gregory Horne, and Imelda J. Pate to hear the Board's facial challenge to the Revival Window. Shortly after their appointment, the State filed a motion to intervene to defend the constitutionality of the SAFE Child Act's Revival Window, and the panel unanimously granted that motion.

**D. Dismissal of Plaintiffs' Suit**

The three-judge panel heard the Board's motion to dismiss on 21 October 2021. After taking the matter under advisement, the panel entered a divided decision granting the Board's motion to dismiss on the basis that the Revival Window facially violated due process protections provided by the Law of the Land Clause. The majority concluded, based on several decisions from the Supreme Court of North Carolina and this Court, that a statute of limitations defense is a constitutionally protected vested right. *See Wilkes County v. Forester*, 204 N.C. 163, 169, 167 S.E. 691, 695 (1933); *Waldrop v. Hodges*, 230 N.C. 370, 373, 53 S.E.2d 263, 265 (1949); *Stereo Center v. Hodson*, 39 N.C. App. 591, 595, 251 S.E.2d 673, 675 (1979); *Colony Hill Condominium I Assoc. v. Colony Co.*, 70 N.C. App. 390, 394, 320 S.E.2d 273, 276 (1984). The majority further held that, because retroactive interference with a vested right is violative of the Law of the Land Clause's constitutional due process

- 8 -

protections, the Revival Window's dissolution of the Board's statute of limitations defense was *per se* unconstitutional. *See Lester Brothers v. Insurance Co.*, 250 N.C. 565, 568, 109 S.E.2d 263, 266 (1959) (noting that a *plaintiff's* vested right to hold a defendant individually liable for business debts could not be extinguished by a later statute eliminating that individual liability because "[a] retrospective statute, affecting or changing vested rights, is founded on unconstitutional principles and consequently void" (citation omitted)).

Judge McGee respectfully dissented from the majority's determination. In his dissent, Judge McGee found the caselaw and constitutional history surrounding retrospective laws, statutes of limitations, and vested rights less clear-cut than the majority, noting that: (1) Article I, Section 16 of the North Carolina Constitution only explicitly prohibits retrospective *criminal* laws and taxes, N.C. Const. art. I, § 16; (2) the North Carolina Constitution nowhere describes a statute of limitations defense as a vested property right; (3) the cases relied upon by the majority did not anchor their vested rights and statute of limitations analyses to any constitutional provisions; and (4) at least two decisions from our Supreme Court recognize that retrospective laws are not *per se* prohibited by our State Constitution, *see State v. —*, 2 N.C. 28, 39-40 (1794) (upholding judgments against delinquent receivers of public money after hearing the Attorney General's argument that "[s]ection 24 of our Bill of Rights . . . prohibits the passing of a retrospective law so far as it magnifies the criminality of a former action, but leaves the Legislature free to pass all others[.]");

*State v. Bell*, 61 N.C. 76, 83 (1867) (holding, prior to amendment of N.C. Const. art. I, § 16 prohibiting retrospective taxes, that a retrospective tax was constitutional because "[t]he omission of any such prohibition [against retrospective laws beyond *ex post facto* criminal statutes] in the Constitution of the United States, and also of the State, is a strong argument to show that retrospective laws, merely as such, were not intended to be forbidden").

Judge McGee viewed the above history in light of the maxim that laws are presumed constitutional and are not to be invalidated "unless [the reviewing court] determine[s] that it is unconstitutional beyond reasonable doubt." *State ex rel. McCrory v. Berger*, 368 N.C. 633, 639, 781 S.E.2d 248, 252 (2016). Concluding that a vested right in a statute of limitations defense is never described as a fundamental right in our State and Federal Constitutions and related caselaw, Judge McGee examined the Revival Window under the rational basis test. *See Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) ("[I]f the statute impacts neither a fundamental right nor a suspect class, we employ the rational basis test."). He then identified the State's interest in "providing an avenue in our civil courts for victims of child sexual abuse to hold accountable child abusers, and their enablers, for past actions" as a rational basis for the Revival Window and would have rejected the Board's facial challenge. *See id.* at 181, 594 S.E.2d at 15 ("As long as there could be some rational basis for enacting the statute at issue, this Court may not invoke principles of due process to disturb the statute." (cleaned up)).

Judge McGee further concluded that, even if the vested right in a statute of limitations defense amounted to a fundamental right because it impacted a property interest, the Revival Window survived heightened strict scrutiny analysis. *See Toomer v. Garrett*, 155 N.C. App. 462, 469, 574 S.E.2d 76, 84 (2002) ("If [the impacted] liberty or property interest is a fundamental right under the Constitution, the government action may be subjected to strict scrutiny." (citation omitted)). Turning to that test, Judge McGee believed several compelling state interests were served by the Revival Window: namely "protecting children from physical and psychological harm, the legislators' determination that many incidents of sexual abuse involved delayed disclosure, and supplying civil remedies to victims of childhood sexual abuse." He then reasoned that the Revival Window—limited to a two-year period and civil actions for child sexual abuse—was narrowly tailored to advance those compelling state interests. As a result, Judge McGee would have denied the Board's motion under this more stringent standard. *See Stephenson v. Bartlett*, 355 N.C. 354, 377, 562 S.E.2d 377, 393 (2002) ("Under strict scrutiny, a challenged governmental action is unconstitutional if the State cannot establish that it is narrowly tailored to advance a compelling governmental interest.").

Plaintiffs and the State both timely appealed from the majority's order.[3]

---

[3] Plaintiffs and the State initially sought and were granted discretionary review by our Supreme Court prior to a determination by this Court. After briefing, the Supreme Court rescinded its grant of discretionary review and remanded the matter to this Court, directing us to "accept the

## II.    ANALYSIS

The central constitutional question raised by the parties, as appropriately considered by the three-judge panel, is whether a retroactive statute resuscitating a claim previously barred by a statute of limitations runs afoul of the North Carolina Constitution regardless of the circumstances.  Recognizing that our precedents related to this issue may not provide the most clear-cut answer, we ultimately hold that our Constitution does not *per se* prohibit such an act by our legislature and, regardless of the degree of scrutiny applicable, the Revival Window passes constitutional muster.  We therefore reverse the trial court's order dismissing Plaintiffs' complaint on the basis that the Revival Window is facially unconstitutional.

### A. Standards of Review

Whether the trial court properly granted a motion to dismiss pursuant to Rule 12(b)(6) is reviewed *de novo* on appeal.  *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 606, 659 S.E.2d 442, 447 (2008).  We take the allegations in the non-movant's pleading as true for purposes of this analysis.  *Id.* at 606, 659 S.E.2d

---

parties' briefs previously filed in [the Supreme] Court as the basis for review in the Court of Appeals." Order, *McKinney v. Goins*, 109PA22 (N.C. March 1, 2023).  We subsequently ordered supplemental briefing and authorized *amici* who filed briefs before the Supreme Court to file the same with this Court.  Order, *McKinney v. Goins*, COA22-261 (N.C. Ct. App. March 22, 2023).  Thus, our consideration of this appeal is on: (1) the briefs filed with our Supreme Court; (2) the parties' supplemental briefs; (3) *amici* briefs properly filed with this Court in accordance with our order, Rule 28(i) of the North Carolina Rules of Appellate Procedure, and relevant caselaw; (4) the record on appeal; and (5) the parties' oral arguments.

at 448.  Dismissal is proper under the Rule only when "it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief."  *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000) (citation omitted).

Similarly, whether a statutory provision is unconstitutional presents a question of law subject to that same *de novo* standard.  *State v. Romano*, 369 N.C. 678, 685, 800 S.E.2d 644, 649 (2017).  Constitutional challenges generally take two forms: (1) facial challenges, which "maintain[ ] that no constitutional applications of [a] statute exist, prohibiting its enforcement in any context," *State v. Packingham*, 368 N.C. 380, 383, 777 S.E.2d 738, 743 (2015) (citation omitted), *rev'd and remanded on other grounds*, *Packingham v. North Carolina*, 582 U.S. 98, 198 L. Ed. 2d 273 (2017); and (2) as-applied challenges, which ask if a statute "can be constitutionally applied to a particular defendant, even if the statute is otherwise generally enforceable."  *Id.*  There is no dispute amongst the parties that the instant appeal solely involves a facial challenge.

Several core principles govern the exercise of *de novo* review over facial challenges like the one before us.  We are obliged to recognize that "the North Carolina Constitution is not a grant of power, but a limit on the otherwise plenary police power of the State.  We therefore presume that a statute is constitutional, and we will not declare it invalid unless its unconstitutionality is demonstrated beyond reasonable doubt."  *Hart v. State*, 368 N.C. 122, 131, 774 S.E.2d 281, 287 (2015)

(citations omitted).   Moreover, "a facial challenge to the constitutionality of an act . . . is the most difficult challenge to mount successfully." *Id.* at 131, 774 S.E.2d at 288 (citation omitted).   The challenger must therefore "meet the high bar of showing that there are no circumstances under which the statute might be constitutional." *Id.* (citation and quotation marks omitted).

**B. The Law of the Land Clause and Federal Due Process**

The Law of the Land Clause found in Article I, Section 19 of the North Carolina Constitution provides that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19.  It is generally equivalent to—but *not* coterminous with—the Fourteenth Amendment's Due Process Clause in the Constitution of the United States.  *Singleton v. N.C. Dep't of Health & Hum. Servs.*, 284 N.C. App. 104, 112-13, 874 S.E.2d 669, 676-77 (2022). As such, "a decision of the United States Supreme Court interpreting the Due Process Clause is persuasive, though not controlling, authority for interpretation of the Law of the Land Clause." *Evans v. Cowan*, 132 N.C. App. 1, 6, 510 S.E.2d 170, 174 (1999) (citation omitted).   Our Law of the Land Clause is thus principally subject to independent interpretation under the particular laws of this state, so long as that interpretation does not contravene the baseline protections provided by the Constitution of the United States.  *See, e.g., State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998) ("[T]he United States Constitution is binding on the

- 14 -

states . . . , so no citizen will be accorded lesser rights no matter how we construe the state Constitution. . . . [T]he United States Constitution provides a constitutional floor of fundamental rights guaranteed all citizens of the United States[.]" (quotation marks omitted)).

The Supreme Court of the United States has held that the Fourteenth Amendment's Due Process Clause does not prohibit states from reviving civil claims otherwise barred by a lapsed statute of limitations. *See, e.g., Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 315-16, 89 L. Ed. 2d 1628, 1636 (1945) ("[C]ertainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment."). Resolution of this appeal turns, then, on whether the Law of the Land Clause provides such protection above and beyond the Fourteenth Amendment. This analysis consists of two questions: (1) are acts reviving expired statutes of limitations *per se* unconstitutional as interfering with vested rights under the text of the North Carolina Constitution, its history, and interpretive judicial decisions from this state?; and (2) if not, is the Revival Window otherwise unconstitutional under the modern due process framework applicable to the Law of the Land Clause?

**C. Interpretive Principles Applicable to the North Carolina Constitution**

Every facial constitutional challenge under the Constitution of North Carolina begins with "the text of the constitution, the historical context in which the people of North Carolina adopted the applicable constitutional provision, and our precedents."

*McCrory*, 368 N.C. at 639, 781 S.E.2d at 252.  Our Supreme Court recently reiterated both the difficulty faced by and the high burden imposed upon litigants asserting that a legislative enactment plainly and clearly violates an express provision of the State Constitution.  *See generally Harper v. Hall*, ___ N.C. ___, 886 S.E.2d 393 (2023).

**D.** **The Law of the Land Clause, *Ex Post Facto* Laws, and Retrospective Laws Through Reconstruction**

An examination of the history of this state's jurisprudence on the Law of the Land Clause and retrospective laws through Reconstruction is illuminating to the instant analysis because of these cases' temporal proximity to the Founding of this State and because of their discussion of constitutional provisions that were retained through subsequent constitutional revisions.  Specific provisions of the North Carolina Constitution impose express limitations on the General Assembly's ability to pass legislation of retroactive effect.  Our Constitution, as originally ratified at the time of the Founding, provided that "retrospective Laws, punishing facts committed before the Existence of such Laws, and by them only declared criminal, are oppressive, unjust, and incompatible with Liberty; wherefore no ex post facto law ought to be made."  N.C. Const. of 1776, Declaration of Rights, § XXIV.  Two decades later, our state's Founding-era appellate court[4] considered whether this provision of

---

[4] Under the Judicial Act of 1777, and prior to the formal establishment of our Supreme Court as a distinct judicial body, a single superior court judge could hold trials, while two or more superior court judges could convene "to sit as an appellate or Supreme Court."  Hon. Kemp P. Battle, President, Univ. of N.C., An Address on the History of the Supreme Court, 103 N.C. 339, 353 (1889).

our original constitution precluded the State from pursuing judgments against delinquent receivers of public money pursuant to a statute retroactively authorizing such collection. *State v. —*, 2 N.C. at 28-29. Although the Court resolved *State v. —*, without issuance of a formal opinion, it is both illuminating of and relevant to a historical understanding of the Law of the Land Clause as originally ratified and enforced in connection with retroactive claims for monetary relief.

In *State v. —*, the trial judge initially ruled that the Attorney General could not pursue such judgments under several state constitutional provisions, including the Law of the Land Clause. *Id.* at 29-30. The Attorney General subsequently revisited the issue with the trial judge, arguing as follows:

> It has been said, amongst other objections to the clause now in question, that this is a retrospective law. Does any part of our constitution prohibit the passing of a retrospective law? It certainly does not. The objection is grounded upon section 24 of our Bill of Rights, which prohibits the passing of an *ex post facto law*. This prohibition is essential to freedom and the safety of individuals. . . . [T]his clause, I admit, is in restraint of legislative power in this particular. This indeed prohibits the passing of a retrospective law so far as it magnifies the criminality of a former action, but leaves the Legislature free to pass all others, and without such a power no government could exist for any considerable length of time, without experiencing great mischiefs. The exercise of such power has been found frequently necessary here since the Revolution, and divers[e] retrospective acts, which the Legislature have passed[,] have been carried into execution and sanctioned by the judiciary. . . . The Convention foresaw the necessity there would be for sometimes enacting such laws, and therefore they have been careful to word section 24 so as not to exclude the power of passing a retrospective law, not

falling within the description of an *ex post facto* law. The Convention meant to leave it with the legislature to pass such laws when the public convenience required it.

*Id.* at 39. When the trial judge was unmoved by the explained necessity of retroactive legislation, the Attorney General raised the issue and presented the same argument to a two-judge panel, who overruled the trial judge. *Id.* at 40. While no formal opinion was provided by the Court, the ruling likely—if not necessarily—involved an inherent determination that the Attorney General's actions to enforce a retrospective law were constitutional.[5]

This understanding of due process and retrospective laws under the North Carolina Constitution—that is, that an overly broad prohibition on retrospective laws interferes with the ability of a legislative body to effectively represent its people in a changing era—appears to have prevailed through the Civil War, as evidenced by *State v. Bell*, 61 N.C. 76, 80 (1867). There, our Supreme Court was tasked with determining whether the North Carolina Constitution barred a retrospective tax. In resolving the issue, the Court observed that:

> Whenever a retrospective statute applies to crimes and penalties, it is an *ex post facto* law, and as such is prohibited by the Constitution of the United States, not only to the States, as we have already seen, but to Congress. The omission of any such prohibition in the Constitution of the United States, and also of the State, is a strong argument to show that retrospective laws, merely

_____

[5] Indeed, that Court had been the first judicial body in the nation to recognize judicial review seven years earlier, holding in *Bayard v. Singleton* that statutes in violation of the North Carolina Constitution were unenforceable. 1 N.C. 5, 7 (1787).

as such, were not intended to be forbidden. It furnishes an instance for the application of the maxim *expressio unius est exclusion alterius*.[6] We know that retrospective statutes have been enforced in our courts[.]

*Bell*, 61 N.C. at 82-83. Then, with this understanding, the Supreme Court upheld the retroactive tax as constitutional in light of the "well established right to pass a retrospective law which is not in its nature criminal[.]" *Id.* at 86.

The following year, the Supreme Court again had an opportunity to consider whether other kinds of retrospective laws—and specifically, laws reviving claims previously barred by a statute of limitations—violated the State Constitution. In *Hinton v. Hinton*, 61 N.C. 410 (1868), the Court was tasked with determining whether a law reviving the rights of widows to claim dower[7] that had expired under a statute of limitations was an unconstitutional retrospective law. It first observed that the right of dower "existed at common law, and was not created by the act of 1784 [that imposed time limitations on dower claims.] . . . [T]he act . . . is a 'statute of limitations,' which in such cases bars the right to a writ of dower, but does not extinguish the preexisting common-law right of dower." *Hinton*, 61 N.C. at 412. When asked, "[d]id the Legislature have power to pass the act [reviving barred dower claims]," *id.* at 415, the Supreme Court held that it did.

---

[6] "Under the doctrine of *expressio unius est exclusion alterius*, when a [law] lists the situations to which it applies, it implies the exclusion of situations not contained in the list." *Evans v. Diaz*, 333 N.C. 774, 779-80, 430 S.E.2d 244, 247 (1993) (citation omitted).

[7] Dower is "[t]he portion of or interest in the real estate of a deceased husband that is given by law to his widow during her life[.]" *Yount v. Yount*, 258 N.C. 236, 241-42, 128 S.E.2d 613, 618 (1962).

First, the Supreme Court noted that revival of a claim barred by the statute of limitations does not inherently affect any particular property of the defendant, and thus does not necessarily implicate any vested rights:

> It is said the Legislature has not the power to interfere with "vested rights," and take property from one and give it to another! That is true[.] . . . There is in this case no interference with vested rights. The effect of the statute is not to take from the devisee his property and give it to the widow, but merely to take from him *a right conferred by the former statute*[.]

*Id.* Stated simply, no claim to or interest in property invariably stems from a defendant's reliance on the procedural bar provided by the statute of limitations, and thus no vested right is impacted when that bar is lifted.

The Supreme Court then went on to explain why this is so, reasoning that removing a procedural bar imposed by a statute of limitations affects the *plaintiff's* claim rather than any interest of the defendant, as "it affects the *remedy* and not the [defendant's] right of property." *Id.* (emphasis in original). In other words, a statute of limitations, as a general proposition, simply serves to procedurally bar recovery by a plaintiff and does not, by contrast, create a property right in the defendant by extinguishing any underlying liability.[8] The Supreme Court then recognized that

---

[8] This distinction persists today. *See, e.g., Williams v. Thompson*, 227 N.C. 166, 168, 41 S.E.2d 359, 360 (1947) ("The lapse of time [under a statute of limitations] does not discharge the liability. It merely bars recovery." (citations omitted)). It also separates statutes of limitation from statutes of repose. *See, e.g., Boudreau v. Baughman*, 322 N.C. 331, 340-41, 368 S.E.2d 849, 856 (1988) ("Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover. The statute of repose, on the other hand, acts as a condition precedent to the action itself. . .

retrospective legislation posed no inherent constitutional problem in this circumstance, as "[t]he power of the Legislature to pass retroactive statutes affecting remedies is settled." *Id.* Finally, the Supreme Court made explicit, by example, that this holding extended beyond the context of dower and reached even ordinary claims for money owed:

> Suppose a simple contract debt created in 1859. In 1862, the right of action was barred by the general statute of limitations, which did not *extinguish the debt*, but simply barred the right of action. Then comes the act of 1863, providing that the time from 20 May, 1861, shall not be counted. Can the debtor object that this deprives him of a vested right? Surely not. It only takes from him the privilege of claiming the benefit of a former statute, the operation of which is for a season suspended.

*Id.* (emphasis in original).

The Board contends that *Hinton* is of no application here because it involved law particular to the vested right of dower. But, as the Supreme Court's debt collection example recounted above plainly illustrates, the Court did not intend the holding and rationale of *Hinton* to be so limited. And Plaintiffs' substantive claims are not entirely dissimilar, insofar as they likewise sound in the common law of torts rather than any statutorily created right of action. Further, "[a] vested right of action is property. The statute may change the remedies, but cannot defeat or modify a right of action that has already accrued." *Mizell v. R.R.*, 181 N.C. 36, 39, 106 S.E.

---

. For this reason we have previously characterized the statute of repose as a substantive definition of rights rather than a procedural limitation on the remedy used to enforce rights." (citations omitted)).

133, 135 (1921). We therefore reject the Board's attempt to cast *Hinton*'s substantive holdings as inapposite.

*Hinton*'s pertinent substantive holdings, then, are threefold: (1) a statute of limitations only inherently affects the availability of a plaintiff's remedy, *Hinton,* 61 N.C. at 415; (2) the procedural bar imposed by a lapsed statute of limitations does not intrinsically or inevitably create a vested right in the defendant, as it does not eliminate liability for the underlying claim or otherwise necessarily implicate property rights, *id.* at 415-16; and (3) the General Assembly is not constitutionally constrained from lifting such a procedural bar in these circumstances, *id.* at 415. In brief, under *Hinton*, revival of a statute of limitations does not *per se* violate the North Carolina Constitution, as the procedural bar created by those statutes is not a vested claim to land, goods, currency, or any incorporeal interest in the same. *Id.* at 415-16.

Within a year of both *Bell* and *Hinton*, the people of North Carolina saw fit to further restrict the ability of the General Assembly to pass retrospective laws when they ratified a new constitution in 1868.[9] In addition to restricting *ex post facto* criminal laws, Article I, Section 32 of the 1868 Constitution newly provided that "[n]o law taxing retrospectively sales, purchases, or other acts previously done, ought to be passed." N.C. Const. of 1868, art. I, § 32. But, beyond restricting *ex post facto* criminal laws and retrospective taxation—the latter in apparent reaction to *Bell*—the people

---

[9] *Bell* was decided in 1867 and *Hinton* at the January term of 1868. The 1868 Constitution was subsequently ratified in April 1868.

ratified no other express provisions further restricting retrospective acts specifically, let alone those deemed constitutional by *Hinton*. Both the language of the Law of the Land Clause and the *Ex Post Facto* Clause of the 1868 Constitution survive in our current state Constitution. *Compare* N.C. Const. of 1868, art. I, §§ 17 & 32, *with* N.C. Const. art. I, §§ 16 & 19 (containing the same language, with added clauses in the current Section 19 providing for equal protection of the laws and prohibiting discrimination on the basis of race, color, religion, or national origin).

This history plainly demonstrates that retroactive civil laws, including ones reviving statutes of limitation, are not inherently unconstitutional; they do not unerringly violate either the Law of the Land Clause or the express provisions of the *Ex Post Facto* Clause of our state Constitution as understood and enacted from the Founding through Reconstruction. *State v —*, 2 N.C. at 39-40; *Bell*, 61 N.C. at 86; *Hinton*, 61 N.C. at 415-16. And though phrased in antiquated language, the core holdings of *Hinton* ring as clearly today as they did centuries ago: a procedural bar to a plaintiff's claim imposed by an expired statute of limitations does not, standing alone, create any property right in the defendant, and said bar may be retroactively lifted without interfering with a defendant's vested rights. *Hinton*, 61 N.C. at 415-16. Inviolable vested rights affecting real or personal property are not equivalent to the fungible benefits of statutory procedure affecting remedies. *Id.* Even more simply, a right of a *plaintiff* to a *potential recovery* does not bear upon a right of a *defendant* to be free from *liability*. *Id.* *See also Colony Hill Condominium I Assoc.*,

70 N.C. App. at 394, 320 S.E.2d at 276 (recognizing that, unlike statutes of limitation, a statute of repose may not be retroactively suspended to revive a cause of action because it "gives the defendant a vested right not to be sued" (citation omitted)). While the Board points us to several decisions and authorities from other jurisdictions to the contrary, they cannot, by their very nature, control this state's historical understanding, interpretation, and application of its own Constitution. *See McCrory*, 368 N.C. at 639, 781 S.E.2d at 252.

In urging us to read this history differently, the Board relies principally on *University v. Foy*, 5 N.C. 58 (1804). But *Foy* involved a narrow legal question— whether the General Assembly could retroactively rescind a prior grant of *title to real property* consistent with the Law of the Land Clause's explicit prohibition against deprivations of "property." 5 N.C. at 84, N.C. Const. art. I, § 19. *Foy*'s resolution of that limited issue by declaring such a revocation of real property rights unconstitutional, *Foy*, 5 N.C. at 88-89, thus cannot overrule the much broader recognition in *State v. —* that, as a general matter, retroactive civil laws are not always unconstitutional. *State v. —,* 2 N.C. at 39-40. Nor did *Foy*—unlike *Hinton*— purport to decide whether vested property rights necessarily flow from an expired statute of limitations such that a retroactive revival of expired claims implicates the Law of the Land Clause. Finally, *Foy* could in no way deprive the later decisions in *Bell* and *Hinton*—as well as the limited change to the *Ex Post Facto* Clause in the 1868 Constitution—of force of law or relevant historical context.

Indeed, other decisions from this time period confirm, consistent with both *Foy* and *Hinton*, that: (1) where a retroactive statute interferes with an established right to property, it violates the Law of the Land Clause as implicating vested rights, *Foy*, 5 N.C. at 87-89; and (2) where a retrospective statute affects only a party's reliance on a procedural statute, no vested rights are affected, *Hinton*, 61 N.C. at 415-16.

For example, in *Hoke v. Henderson*, 15 N.C. 1, 17 (1833), *overruled by Mial v. Ellington*, 134 N.C. 131, 46 S.E. 961 (1903), the Supreme Court was tasked with deciding whether a position of public office constituted a vested right that could not be retrospectively abridged. The Court first observed that constitutionally protected vested rights, in accord with the plain text of the Law of the Land Clause, generally sounded in "every species of *corporeal property*, real and personal." *Hoke*, 15 N.C. at 16 (emphasis added). It then extended the concept of vested rights to incorporeal property rights, such as "the right to exercise a[n] . . . employment, and to take the fees and emoluments thereunto belonging." *Id.* at 17. Thus, because public office includes the right to "secure the possession of it and its emoluments," retrospective interference with that office violated the Law of the Land Clause as abridging vested incorporeal property rights. *Id.* at 19.[10]

---

[10] Importantly, as the later decisions of *Bell* and *Hinton* would demonstrate, the fact that a retroactive statute implicates a defendant's monetary interests does not invariably render it as unconstitutionally affecting a vested property right. *Bell*, 61 N.C. at 86; *Hinton*, 61 N.C. at 415-16. And *Mial* would later overrule *Hoke* on the basis that its definition of "property" in connection with public office was unworkable when taken "to its logical conclusion," 134 N.C. at 154, 46 S.E. at 969, and was uniformly contrary to the law in other state and federal jurisdictions, *id.* at 156, 46 S.E. at 970.

*Hoke*'s implicit holding—and *Hinton*'s explicit one—that constitutionally vested rights sound in corporeal or incorporeal property interests rather than procedure is seen throughout other cases of the era. *Compare Robinson v. Barfield*, 6 N.C. 391, 422 (1818) (holding a statute retrospectively validating deeds improperly executed under prior law was unconstitutional as violating vested rights), *Scales v. Fewell*, 10 N.C. 18, 18-20 (1824) (holding liens on real property create a vested right), *Pratt v. Kitterell*, 15 N.C. 168, 168-71 (1833) (holding a right to claim, control, and possess an estate as administrator is a vested right), *Battle v. Speight*, 31 N.C. 288, 292 (1848) (holding devises of property by will create a vested right), *and Green v. Cole*, 35 N.C. 425, 428 (1852) ("The legislature cannot interfere with vested rights of property." (citing *Hoke*)), *with Oats v. Darden*, 5 N.C. 500, 501 (1810) ("[W]hen an act of Assembly takes away from a citizen a vested right, its constitutionality may be inquired into; but when it alters the remedy or mode of proceeding as to rights previously vested, it certainly, in that respect, runs in a constitutional channel."), *Harrison v. Burgess*, 8 N.C. 384, 391-92 (1821) (holding a law authorizing the Supreme Court to order new trials for errors of law did not affect vested rights when applied to cases pending appeal at the time of enactment), *and Phillips v. Cameron*, 48 N.C. 390, 392 (1856) (stating "[w]e admit, that the Act of 1852, applying as it does to the remedy and not to the rights of the parties, might have been made retrospective in its operation," before opining that such intent could have been made clear by entitling the statute "[a]n act to encourage litigation, by reviving stale claims").

**E. Modern Jurisprudence Addressing Statutes of Limitation, Vested Rights, and Due Process**

Of course, as all parties acknowledge, our history did not terminate in 1868, and later decisions would elucidate certain principles that make the question of the Revival Window's constitutionality still a searching one. Understandably, the Board relies heavily on a line of cases from the Reconstruction era and the early twentieth century to argue, essentially, that *Hinton* is no longer good law. Our careful review of those cases leads us to conclude that they are inapposite to the dispute before us, and respecting our role as an intermediate court, we decline to hold that *Hinton* is no longer good law absent any explicit overruling of it.

In 1869, in *Johnson v. Winslow*, the Supreme Court addressed a slightly different question than that presented here: namely, whether the General Assembly could suspend statutes of limitation for claims that had not yet run. 63 N.C. 552, 553 (1869). In *dicta*, the Supreme Court cited a legal treatise for the proposition that "the Legislature has no power to revive a right of action after it has been barred, *i.e.,* to suspend the operation of the Statute of Limitations retrospectively, after it has operated." *Id.* (citation omitted). Its decision did not however, turn on that general principle, nor did it purport to abrogate or overrule *Hinton*—a decision that *did* squarely address the legal question of reviving an *expired* statute of limitations. In fact, in 1880, our Supreme Court would reaffirm *Hinton*. *See Tabor v. Ward*, 83 N.C. 291, 294 (1880) ("Retroactive laws are not only not forbidden by the state constitution

but they have been sustained by numerous decisions in our own state. See . . . *Hinton v. Hinton*, Phil., 410, where it was expressly held 'that retroactive legislation is not unconstitutional, and that retroactive legislation is competent to affect remedies not rights.'" (other citations omitted)).

A few years later, in *Whitehurst v. Dey*, the Supreme Court would once more, in *dicta*, cite a treatise for the proposition that "'[s]tatutes of limitation relate only to the remedy and may be altered or repealed before the statutory bar has become complete, but not after, so as to defeat the effect of the statute in extinguishing the rights of action.'" 90 N.C. 542, 545-46 (1884). But that decision on contract rights also expressly distinguished *Hinton*—again, in *dicta,* and without expressly overruling it—on an understanding that such statutes are "an impairment of vested rights and . . . fall[ ] within the inhibition of the *federal* constitution[.]" *Id.* at 545 (emphasis added). The Supreme Court of the United States would subsequently show *Whitehurst*'s reading of the federal constitution to be erroneous less than a year later. *See Campbell v. Holt*, 115 U.S. 620, 628, 29 L. Ed. 483, 487 (1885) (holding that the Fourteenth Amendment does not bar a state legislature from reviving civil claims after a statute of limitations has run because "no right is destroyed when the law restores a remedy which had been lost").

This pattern of discussing statutes of limitation as vested rights in *dicta* returned after the turn of the century in *Wilkes County v. Forester*, 204 N.C. 163, 167 S.E. 691 (1933). There, Wilkes County sought to foreclose on tax liens filed against

the defendants' property for unpaid taxes in 1924 and 1925, relying on tax sale certificates obtained in 1928. *Id.* at 165-66, 167 S.E. at 692-93. However, Wilkes County delayed filing its action until 1930—well after the 18-month filing period allowed by statute. *Id.* at 166, 167 S.E. at 693. The defendants pled that statute of limitations, and Wilkes County sought to counter that defense on a revival act passed during the pendency of the suit in 1931 which extended the statute of limitations for tax certificates through December of that year. *Id.* at 166, 167 S.E. at 692-93. The trial court dismissed Wilkes County's claim, and it appealed to the Supreme Court, arguing that the extension statute applied to save the tax certificates in question. *Id.*

The Supreme Court ultimately disagreed with Wilkes County, concluding that the revival act did not apply to the case. The relevant revival act, enacted in 1931 *after* Wilkes County had filed its foreclosure action, stated as follows:

> Any . . . *board of commissioners of any county* . . . holding a certificate of sale on which an action to foreclose has not been brought . . . shall have until the first day of December, one thousand nine hundred and thirty-one, to institute such action. *This section and extension shall include all* certificates executed for the sales prior to and including sales for the tax levy of the year one thousand nine hundred twenty-eight. . . . *Provided, however, that where any action to foreclose has heretofore been instituted or brought for the collection of any tax certificate, prior to the ratification of this act, under the then existing laws, nothing herein shall prevent or prohibit the continuance and suing to completion any of said suit or suits under the laws existing at the time of institution of said action.*

*Id.* at 166, 167 S.E. at 693 (citation omitted) (emphasis in original). The plain

language of the revival statute—limiting its applicability to actions filed after enactment and disclaiming any effect on foreclosures already instituted—thus rendered it of no application to the controversy, as the foreclosure action had been filed *before* the revival act was passed. *Id.* at 168, 167 S.E. at 693-94. And, because the statute of limitations had run at the time of the foreclosure action's filing and the revival act did not apply, Wilkes County's claim was time-barred under applicable law. *Id.*

Despite having settled the dispute with the foregoing holding, the Supreme Court nonetheless went on to consider another question not necessary to its decision: whether the 1931 act could revive previously barred claims had it applied to the foreclosure action. *Id.* at 168, 167 S.E. at 694. It proceeded to analyze *dicta* from various North Carolina decisions, provisions of various legal treatises, and holdings from other jurisdictions, before opining:

> Whatever may be the holdings in other jurisdictions, we think this jurisdiction is committed to the rule that an enabling statute to revive a cause of action barred by the statute of limitations is inoperative and of no avail. . . . It cannot be resuscitated. . . . It takes away vested rights of defendants and therefore is unconstitutional.

*Id.* at 170, 167 S.E. at 695 (citing *Booth v. Hairston*, 193 N.C. 278, 286, 136 S.E. 879, 883 (1927) (holding an enabling act purporting to retroactively validate late-filed *deeds to real property* in probate that would otherwise be void was inoperative to cure and save such a late-filed deed)). This is *dicta*.

Even if the above language is not considered *dicta*, the rationale and reasoning of *Wilkes County* show—consistent with the property vs. procedural distinctions drawn from *Foy*, *Hinton*, *etc.*—that the above discussion is addressing cases in which expired statutes of limitation affect vested *property* rights, not a procedural defense. In keeping with Wilkes County's attempt to foreclose on real property in the action at hand, virtually all the decisions cited by the Supreme Court in *Wilkes County* discussed the unconstitutionality of revival statutes where the expired claim was explicitly for *title* to property. *Id.* at 168-70, 167 S.E. at 694-95. For example, in addition to relying on the real property dispute resolved in *Booth*, the Supreme Court favorably quoted *Campbell*'s statement that "[i]t may . . . very well be held that, in an action to recover *real or personal property*, where the question is as to the removal of the bar of the statute of limitations by legislative act passed after the bar has become perfect[,] such act deprives the party of his property without due process of law." *Id.* at 168, 167 S.E. at 694 (quoting *Campbell*, 115 U.S. at 623, 29 L. Ed. at 483) (emphasis added). It then cited several treatises, two of which stated as follows:

> There appears to be no divergence of opinion as to the full applicability of the principle that the Legislature cannot divest a vested right to a defense under the statute of limitations, whether the case involves the title to real estate or personal property. . . . Where title to property has vested under a statute of limitations it is not possible by any enactment to extend the statute or revive the remedy since this would impair a vested right in the property."

*Id.* at 169, 167 S.E. at 694 (emphasis added) (citations and quotation marks omitted).

Critically, the Supreme Court did not purport to overrule *Hinton* based on any controlling holding that the revival of expired actions involving claims unrelated to real or personal property offend the Law of the Land Clause or some other express provision of the North Carolina Constitution. And, notwithstanding any debate over the controlling effect of *dicta* or the significance of the property vs. procedure distinction, the Supreme Court immediately reaffirmed that the revival statute *did not apply* to the controversy at issue. *Id.* at 170, 167 S.E. at 695.

In an attempt to read *Wilkes County* more broadly, the Board cites to numerous cases repeating *Wilkes County*'s vested rights commentary in subsequent *dicta. See Sutton v. Davis*, 205 N.C. 464, 467-69, 171 S.E. 738, 739-40 (1933) (holding an amendment to a statute that barred recovery for debts discharged in bankruptcy to subsequently allow for recovery did not have retroactive effect and thus did not apply to the case at bar, while also citing *Wilkes County* to note that *if* the amendment did have retroactive effect, such retroactivity would be unconstitutional); *Waldrop v. Hodges*, 230 N.C. 370, 373-74, 53 S.E.2d 263, 265 (1949) (observing, based on *Johnson*, *Whitehurst*, and *Wilkes County*, that the General Assembly may not revive an expired statute of limitations before holding that issue did not arise in the case before the Court because the relevant statute extended the limitations period prior to expiration); *Jewell v. Price*, 264 N.C. 459, 461, 142 S.E.2d 1, 3 (1965) (holding a non-retroactive amendment to the statute of limitations after filing of the plaintiffs' suit was not applicable while citing *Waldrop, Wilkes County* and related cases for

their discussions of revival statutes);[11] *Stereo Center*, 39 N.C. App. at 595, 251 S.E.2d at 675 (citing *Waldrop* for the proposition that expired statutes of limitations may not be revived in violation of a vested right, but resolving the appeal on a different question because the appellant conceded the amended statute of limitations extending his time to bring suit did not apply).[12]  But *dicta* upon *dicta* does not the law make.  *See Hayes v. Wilmington*, 243 N.C. 525, 539, 91 S.E.2d 673, 684 (1956) (declining to follow "double *dicta*").  Nor can *dicta* in subsequent decisions serve to expand or modify earlier holdings, as *dicta* is itself without legal effect.  *Id.* at 538, 91 S.E.2d at 684.  Finally, *dicta* does not empower us to reach beyond our limited role as an intermediate appellate court and announce a new constitutional rule in contravention of undisturbed precedent from our Supreme Court.  *Compare State ex rel. Utilities Comm. v. Central Telephone Co.*, 60 N.C. App. 393, 395, 299 S.E.2d 264,

---

[11] We read *Jewell* as addressing the same factual and legal circumstances raised in *Wilkes County*: a statute of limitations expired, the plaintiff filed suit, and the General Assembly later enlarged the statute of limitations *non-retroactively*. *Wilkes County*, 204 N.C. at 168, 167 S.E. at 693-94; *Jewell*, 264 N.C. at 461, 142 S.E.2d at 3. The session law cited in *Jewell* enlarging the statute of limitations at issue unambiguously disclaimed any retroactive effect. *See* 1963 N.C. Sess. Laws 1300, 1301, ch. 1050, sec. 3 ("This Act shall be in full force and effect *from and after its ratification*." (emphasis added)). Moreover, statutes are prohibited from retroactive effect unless such intent is manifest in the statute. *Estridge v. Ford Motor Co.*, 101 N.C. App. 716, 718-19, 401 S.E.2d. 85, 87 (1991). The plaintiff in *Jewell* thus rightly conceded—and the Supreme Court accepted—that the session law extending the session law revising the statute of limitations after plaintiff had filed suit "ha[d] no application." 264 N.C. at 461, 142 S.E.2d at 3. As noted *supra*, the Revival Window at issue here materially differs from the statutes in *Wilkes County* and *Jewell* in that it unambiguously applies retroactively, and Plaintiffs filed suit after the Revival Window's enactment. Thus, we do not read *Jewell* as controlling precedent on the facts of this case.

[12] To the extent that any decisions of this Court purported to announce that expiration of a statute of limitations creates a vested right in all civil actions, we could not do so in conflict with the undisturbed holding of *Hinton*. *Emp't Staffing Grp., Inc. v. Little*, 243 N.C. App. 266, 271 n.3, 777 S.E.2d 309, 313 n.3 (2015).

266 (1983) (holding this Court is not bound by *dicta* from our Supreme Court), *with State v. Fowler*, 159 N.C. App. 504, 516, 583 S.E.2d 637, 645 (2003) ("This Court is bound by decisions of the North Carolina Supreme Court." (citations omitted)).

**F. *Wilkes County* and Its Progeny Do Not Establish the Revival Window's Facial Unconstitutionality Beyond a Reasonable Doubt**

With the benefit of the above pilgrimage through our constitutional jurisprudence—necessary to a thorough understanding of these seemingly contradictory precedents that we ultimately conclude weigh against the facial constitutional challenge to the Revival Window—we revisit our initial question: does the "text of the constitution, the historical context in which the people of North Carolina adopted [the Law of the Land Clause], and our precedents," *McCrory*, 368 N.C. at 639, 781 S.E.2d at 252, make "plain and clear," *id.*, that the General Assembly may not revive a tort claim—as opposed to one sounding in property or contract—after the relevant statute of limitations has expired? More specifically, is *Wilkes County* "clear and dispositive," as the Board claims, in establishing that such an exercise of the General Assembly's otherwise plenary powers "*directly* conflicts with an *express* provision of the constitution"? *Harper*, ___ N.C. at ___, 886 S.E.2d at 415 (emphases added). Under the applicable standard of review and burden of proof borne by the Board, we answer these questions in the negative.

As forecast above, the language in *Wilkes County* controlling the outcome of that case does not clearly answer the question posed here. First, its ultimate holding

did not turn on the question of whether revival of a statute of limitations violates the state Constitution, as the Supreme Court instead held that the purported revival statute in that case did not, by its own language, apply to the subject action filed pre-enactment. *Wilkes County*, 204 N.C. at 168, 167 S.E. at 693-94. Second, despite the Board's assertions, *Wilkes County did* directly implicate property rights, and only property rights, because the county's claim was a foreclosure of "[a] lien *upon real estate for taxes or assessments due thereon*," *id.* at 167, 167 S.E. at 693 (emphasis added) (citation and quotation marks omitted); indeed, many of the treatises and decisions cited in *Wilkes County* likewise related to property.[13] Third, *Wilkes County* did not elucidate "an express provision of the [state] constitution" limiting such an exercise of legislative power. *Harper*, ___ N.C. at ___, 886 S.E.2d at 415. Finally, *Wilkes County* did not purport to overrule *Hinton*, a decision that *did* squarely address and resolve whether the revival of statutes of limitation *per se* violates the state Constitution and ultimately holding that they did not where no property rights were at issue.

On balance, *Hinton* thus resolves—with more direct applicability than

---

[13] Of note, in stating that "we think this jurisdiction is committed to the rule that an enabling statute to revive a cause of action barred by the statute of limitations is inoperative and of no avail," *id.* at 170, 167 S.E. at 695, the Supreme Court cited only to *Booth*. There, the Supreme Court held that an enabling act purporting to retroactively validate late-filed *deeds to real property* in probate that would otherwise be void was inoperative to cure and save such a late-filed deed. *Booth*, 193 N.C. at 286, 136 S.E. at 883.

*Wilkes*—whether the Revival Window is *per se* unconstitutional.[14] As *State v.* — and *Bell* had previously elucidated, the only provision of the state Constitution expressly concerning retrospective statutes is found in the *Ex Post Facto* Clause, and the omission of any provision either describing retrospective protections for "vested rights" strongly suggests that statutes reviving claims barred by statutes of limitation "were not intended to be forbidden." *Bell*, 61 N.C. at 83. The ratification of a new Constitution in 1868—abrogating *Bell* but leaving *Hinton* untouched—furthers the point that statutes reviving barred claims under expired statutes of limitation are "no interference with vested rights" in all cases and are not *per se* unconstitutional on that basis. *Hinton*, 61 N.C. at 415. That *Hinton* does not appear to have ever been overruled, and instead was merely mentioned in *Wilkes County*'s discussion of an issue on which its holding did not ultimately turn, further weighs in its favor.

Our understanding of this constitutional history is reaffirmed by the

---

[14] To be clear, we do not purport to overrule *Wilkes County* in excess of our authority as an intermediate appellate court. To the contrary, we recognize that *Wilkes County does* apply with precedential force to those legally and factually analogous cases governed by its substantive holding. We simply disagree with our respected colleague that this case counts among them. *See Howard v. Boyce*, 254 N.C. 255, 265, 118 S.E.2d 897, 905 (1961) (noting, in reconciliation of arguably conflicting North Carolina Supreme Court precedents, that "[d]ecided cases should be examined more from the standpoint of the total factual situations presented than the exact language used. A decision of the Supreme Court must be interpreted within the framework of the facts of that particular case."); *In re Civil Penalty*, 324 N.C. 373, 378, 379 S.E.2d 30, 33 (1989) (holding this Court erred in reading a Supreme Court decision too broadly and reversing our decision on that basis); *State ex rel. Utils. Comm'n v. Virginia Elec.*, 381 N.C. 499, 523 n.4, 873 S.E.2d 608, 624 n.4 (2022) ("[W]e note that the concept of stare decisis requires, in essence, that a court identify certain material differences between the case that is currently before the court and potentially-relevant precedent before declining to follow that precedent[.]").

similarities evident in *Hinton* and the United States Supreme Court's decision in

*Campbell*. *See Evans*, 132 N.C. App. at 6, 510 S.E.2d at 174 ("[A] decision of the

United States Supreme Court interpreting the Due Process Clause is persuasive,

though not controlling, authority for interpretation of the Law of the Land Clause."

(citation omitted)). Both *Hinton* and *Campbell* recognized that the expiration of a

statute of limitations bars a right of action and thus "affects the *remedy* and not the

right of property." *Hinton*, 61 N.C. at 415 (emphasis in original). *See also Campbell*,

115 U.S. at 628, 29 L. Ed. at 487 ("[N]o right is destroyed when the law restores a

remedy which had been lost."). This understanding of statutes of limitation as bars

to remedies—not underlying claims—persists in our modern jurisprudence. *See, e.g.,*

*Christie v. Hartley Constr., Inc.,* 367 N.C. 534, 538, 766 S.E.2d 283, 286 (2014)

("[S]tatutes of limitation are procedural, not substantive, and determine not whether

an injury has occurred, but whether a party can obtain a remedy for that injury."

(citation omitted)).[15] Thus, just as the revival statute in *Hinton* "t[ook] from

---

[15] The Board asserts that Plaintiffs' claims also violate the purported ten-year statute of repose found in N.C. Gen. Stat. § 1-52(16) (2023), which provides that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." This issue was not considered by the three-judge panel below, and their ruling does not address it. Nonetheless, because there is no contention that Plaintiffs suffered latent injuries—and given that the Board repeatedly asserts that the Plaintiffs' claims accrued prior to their eighteenth birthdays—we hold that the purported statute of repose cited by the Board does not apply. *See Wilder v. Amatex Corp.*, 314 N.C. 550, 555, 336 S.E.2d 66, 69 (1985) ("[N.C. Gen. Stat. § 1-52(16)] added a ten-year statute of repose . . . which applies only to latent injury claims."); *Boudreau*, 322 N.C. at 334 n.2, 368 S.E.2d at 853 n.2 (holding N.C. Gen. Stat. § 1-52(16) "was intended to apply to plaintiffs with latent injuries. It is undisputed that plaintiff was aware of his injury as soon as it occurred. Thus the statute is inapplicable on the facts of this case." (citations omitted)); *Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638 (2001) (holding a sexual assault victim's injuries were not latent, accrued and

[defendant] the privilege of claiming the benefit of a former statute" rather than any property interest or vested right under the North Carolina Constitution, 61 N.C. at 415, the Supreme Court of the United States recognized that, under the federal constitution, there is "no right which the [defendant] has in the law which permits him to plead lapse of time . . . [and] which shall prevent the legislature from repealing that law because its effect is to make him fulfill his honest obligations." *Campbell*, 115 U.S. at 629, 29 L. Ed. at 487.

In sum, the Law of the Land Clause does not, either in its plain text or through further elucidation in the *Ex Post Facto* Clause, "limit legislative power [to pass the Revival Window of the SAFE Child Act] by *express* constitutional restriction[s]." *Harper,* ___ N.C. at ___, 886 S.E.2d at 414 (emphasis added) (citation omitted). Precedents from the Founding through Reconstruction and the ratification of the 1868 Constitution further undercut the Board's argument to the contrary. *See State v. —,* 2 N.C. at 40; *Bell*, 61 N.C. at 82-83; *Hinton*, 61 N.C. at 415; *Tabor,* 83 N.C. at 294. And while *Wilkes County*'s discussion of the question, ancillary to its ultimate holding, is relevant, it does not establish a "plain and clear" constitutional violation, *McCrory*, 368 N.C. at 639, 781 S.E.2d at 252, particularly when *Hinton* has not been overruled, is on all fours, and comports with the persuasive authority found in the United States Supreme Court's interpretation of the Fourteenth Amendment. Stated

---

were barred by the three-year statute of limitations, and, "thus, § 1-52(16) is inapplicable to the facts of this case").

briefly, and for those reasons, the Board has not shown, by reliance on *Wilkes County* and similar *dicta* in some subsequent cases, that the Revival Window "is unconstitutional beyond reasonable doubt." *Id.* at 639, 781 S.E.2d at 252.

## G. The Revival Window Satisfies Due Process

Having held that the Board has failed to show beyond a reasonable doubt— and based on our constitutional text, unique state history, and related jurisprudence—that resuscitations of claims under expired statutes of limitation are *per se* violative of the express text of the Law of the Land Clause, we now turn to whether the Revival Window violates constitutional due process under the present law of this State, *i.e.,* the modern substantive due process analysis. *See, e.g., Bunch v. Britton*, 253 N.C. App. 659, 674-75, 802 S.E.2d 462, 473-74 (2017) (reviewing the substantive and procedural due process tests applicable under the state and federal constitutions); *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 535-36, 571 S.E.2d 52, 59 (2002) (holding substantive due process challenges under the Law of the Land Clause asserting infringements of fundamental rights are subject to strict scrutiny, while other rights are subject to rational basis review).

Substantive due process, derived by the United States Supreme Court from the Fourteenth Amendment to the United States Constitution—the Law of the Land Clause's federal complement—originally subjected *all* statutes restricting protected property interests to the highest level of judicial scrutiny. *See, e.g., Lochner v. New*

*York,* 198 U.S. 45, 64, 49 L. Ed. 937, 944 (1905) (invalidating a workplace regulation that did not involve conduct "dangerous in any degree to morals, or in any real and substantial degree to the health of the employees"). Nonetheless, some legislative concerns were so pressing as to allow impingement of property and contract interests under even this exacting standard. *See Holden v. Hardy*, 169 U.S. 366, 392, 42 L. Ed. 780, 791 (1898) (upholding a state statute regulating mine work hours because regulations restricting property interests "may be lawfully resorted to for the purpose of preserving the public health, safety, or morals, or the abatement of public nuisances" (citation omitted)).

The law of substantive due process has not been static. Only a few years after our Supreme Court's 1933 decision in *Wilkes County*, the United States Supreme Court recognized that not all life, liberty, and property interests under the Fourteenth Amendment are automatically subjected to the highest form of judicial inquiry. *See West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391, 81 L. Ed. 703, 708 (1937) (upholding a state minimum wage statute as "reasonable in relation to its subject and . . . adopted in the interests of the community"); *U.S. v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4, 82 L. Ed. 1234, 1241 n.4 (1938) (announcing a rational basis test for regulations restricting economic activity, but stricter scrutiny for those that, *inter alia*, discriminate against minorities). Under this modern formulation, such a claim is now subject to either strict scrutiny or the more permissive "rational basis" review. *Bunch*, 253 N.C. App. at 674-75, 802 S.E.2d at 473-74. Currently,

"[n]ot every deprivation of liberty or property constitutes a violation of substantive due process granted under article I, section 19. Generally, any such deprivation is only unconstitutional where the challenged law bears no rational relation to a valid state objective." *Affordable Care, Inc.*, 183 N.C. App. at 535, 571 S.E.2d at 59 (citation omitted).

Whether to apply strict scrutiny or rational basis review to a statute challenged under both the federal Constitution and the Law of the Land Clause of the North Carolina Constitution is determined by our precedents according to the following principles:

> Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained. Thus, substantive due process may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power.
>
> . . . .
>
> In order to determine whether a law violates substantive due process, we must first determine whether the right infringed upon is a fundamental right. If the right is constitutionally fundamental, then the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state interest. If the right infringed upon is not fundamental in the constitutional sense, the party seeking to apply it need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest.

*State v. Fowler*, 197 N.C. App. 1, 20-21, 676 S.E.2d 523, 540-41 (2009) (cleaned up).

Assuming, *arguendo*, that an affirmative defense based on a statute of limitations implicates a fundamental right—which we do not think is a likely conclusion, as discussed above—we hold that the Revival Window passes constitutional muster even under the more stringent strict scrutiny test. This test imposes two requirements on the challenged statute: (1) it must advance "a compelling state interest," *id.* at 21, 676 S.E.2d at 540 (citation and quotation marks omitted); and (2) it must be "narrowly drawn to express only the legitimate interests at stake," *M.E. v. T.J.*, 275 N.C. App. 528, 546, 854 S.E.2d 74, 93 (2020) (citation and quotation marks omitted), *aff'd as modified on separate grounds*, 380 N.C. 539, 869 S.E.2d 624 (2022).

As detailed *supra* Part I.B., the General Assembly's unanimous enactment of the SAFE Child Act and its Revival Window was a united response to developing science that, by the 2010s, had solidified an understanding that child sex abuse victims suffer lifelong injuries and delay disclosure well into adulthood. Vindication of the rights of child victims of sexual abuse—and ensuring abusers and their enablers are justly held to account to their victims for the trauma inflicted—are unquestionably compelling state interests. *Cf., e.g.,* N.C. Gen. Stat. § 14-208.5 (2021) ("[T]he protection of [sexually abused] children is of great governmental interest."); *Packingham*, 368 N.C. at 388, 777 S.E.2d at 746 ("[P]rotecting children from sexual abuse is a substantial governmental interest."). Moreover, encouraging entities— trusted by parents to care and protect their children—to guard against abusive

employees or agents through civil penalties is likewise a compelling interest. *Cf. State v. Bishop*, 368 N.C. 869, 877, 787 S.E.2d 814, 820 (2016) (recognizing, in applying strict scrutiny review to an anti-cyberbullying statute, that "the General Assembly has a compelling interest in protecting the physical and psychological well-being of minors"). So, too, is ensuring that the law—when premised on an outdated and inaccurate understanding of child sexual abuse—does not frustrate the ability of child victims to pursue their common law remedies.

The SAFE Child Act's Revival Window is also so narrowly tailored as to satisfy strict scrutiny review. The revival period is limited to only two years and, at the time of this opinion's filing, has long expired. 2019 N.C. Sess. Laws 1231, 1234, ch. 245, sec. 4.2(b). It likewise restricts the category of claims revived to: (1) "civil actions," for (2) "child sexual abuse." *Id.* Finally, it limits itself to a procedural change only—it in no way lowers the burden of proof that a plaintiff must meet, creates new claims for which a defendant may be held liable, or invalidates any of a defendant's substantive defenses to liability on the merits. The Revival Window's lifting of a procedural bar goes no further than necessary to satisfy the compelling state interests identified above: namely, that child victims of sexual abuse, injured before science and society reached a full and complete understanding of the nature of their trauma, have a fair and just opportunity to hold their abusers to account for their injuries.

The Board advances several policy arguments to contend that the Revival Window is ineffective to accomplish its goals. Specifically, the Board notes numerous

hardships stemming from stale or unpreserved evidence. "[T]hese arguments are more properly directed to the legislature." *State v. Anthony*, 351 N.C. 611, 618, 528 S.E.2d 321, 325 (2000). To the extent they are proper for this Court to consider, these contentions do not support an argument that the Revival Window is *facially, i.e.,* in all cases, unconstitutional. As the Board acknowledges, there is no statute of limitations for felony child sex abuse, and the State, facing the highest possible burden of proof, was nonetheless able to convict Plaintiffs' abuser. Moreover, any staleness of evidence was not so significant as to interfere with the ability of a trial court to accept a child sex abuser's guilty plea upon an independent factual basis in a related appeal decided contemporaneously with this decision. *Taylor v. Piney Grove Vol. Fire and Rescue Dept.*, COA22-259, slip op. at 3 (N.C. Ct. App. Sept. 12, 2023) (unpublished); *see also Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, ___ N.C. ___, ___, 887 S.E.2d 848, 850 (2023) (discussing the guilty plea entered by the abuser in *Taylor*). These policy arguments' limited relevance does not support the Board's assertion that the Revival Window is unconstitutional in *all* contexts beyond a reasonable doubt.

## III. <u>CONCLUSION</u>

Evaluating a facial constitutional challenge to an enactment of our General Assembly is perhaps the single most solemn duty of this Court. It represents an "important and momentous subject," *Bayard*, 1 N.C. at 2, and is conducted "with great deliberation and firmness," *id.* Given our courts' "great reluctance . . . [to] involv[e]

themselves in a dispute with the Legislature of the State," *id.* at 2-3, a party challenging the facial constitutionality of a statute is faced with a particularly heavy burden: "a claim that a law is unconstitutional must surmount the high bar imposed by the presumption of constitutionality and meet the highest quantum of proof, a showing that a statute is unconstitutional beyond a reasonable doubt." *Harper*, ___ N.C. at ___, 886 S.E.2d at 414-15 (citation omitted).  On review of the text of the North Carolina Constitution, its history, and our jurisprudence interpreting it, we hold that the Board has failed to show beyond a reasonable doubt that an express provision of that supreme document prohibits revivals of statutes of limitation. Similarly, we hold that, under even the highest level of scrutiny, the SAFE Child Act's Revival Window passes constitutional muster.  The divided order of the three-judge panel reaching the contrary conclusion is reversed, and this matter is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judge GORE concurs in result only.

Judge CARPENTER dissents by separate opinion.

CARPENTER, Judge, dissenting.

I respectfully dissent from the Majority's opinion. I will start by noting our common ground. I completely agree: Sexual abuse of children is vile. I agree that striking down legislation as facially unconstitutional is strong medicine, only suitable for clear constitutional violations. I also agree that the prohibition of reviving time-barred claims is not a textual one; the text of the North Carolina Constitution lacks such a provision.

But that is where our common ground ends. We are bound by the precedents of this Court and the North Carolina Supreme Court. Stare decisis is not limited to decisions this Court deems well-reasoned. Stare decisis is not limited to decisions that produce desirable results. And stare decisis is not limited to decisions tethered to textualism—indeed, stare decisis is often an exception to textualism. The stability and predictability of our justice system requires that we adhere to the precedents of our Court and the North Carolina Supreme Court.

We lack the authority to overrule the North Carolina Supreme Court, and it appears that my colleagues and I disagree on this point. *Wilkes County* and its progeny control this case. Regardless of whether *Wilkes* produces a desirable outcome or whether it is a bastion of textualism, *Wilkes* is an opinion from the highest court in our state, and it exceeds our power to overrule it. In my view, the Majority is overruling several binding cases from this Court, and the Majority effectively overrules *Wilkes*, itself. Because we are bound by stare decisis, I would affirm the

majority order entered by the three-judge panel.  Therefore, I respectfully dissent.

## I.      Standard of Review & Stare Decisis

The Majority correctly notes that "[w]e review constitutional questions de novo." *Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001).  "In exercising de novo review, we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond reasonable doubt." *State ex rel. McCrory v. Berger*, 368 N.C. 633, 635, 781 S.E.2d 248, 250 (2016).

Stare decisis binds us beyond a reasonable doubt.  *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (stating this Court must follow North Carolina Supreme Court decisions).  Stare decisis means "that where a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed in similar cases." *State v. Ballance*, 229 N.C. 764, 767, 51 S.E.2d 731, 733 (1949).  Stare decisis supports the age-old axiom: "the law must be characterized by stability." *Id.* at 767, 51 S.E.2d at 733.

But of course, the North Carolina Supreme Court may overrule flawed cases. *See, e.g.*, *State v. Elder*, 383 N.C. 578, 603, 881 S.E.2d 227, 245 (2022) (overruling a portion of *State v. Hall*, 305 N.C. 77, 286 S.E.2d 552 (1982)); *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't Health & Hum. Servs.*, 383 N.C. 31, 56–57, 881 S.E.2d 558, 576–77 (2022) (overruling *Nanny's Korner Day Care Ctr., Inc. v. N.C. Dep't Health & Hum. Servs.*, 264 N.C. App. 71, 825 S.E.2d 34 (2019)).  This is because "stare decisis

2

will not be applied in any event to preserve and perpetuate error and grievous wrong."
*Ballance*, 229 N.C. at 767, 51 S.E.2d at 733.

We, however, are not the Supreme Court, and notwithstanding the Majority's desire to do so, we lack authority to overrule decisions from our Supreme Court. *Dunn*, 334 N.C. at 118, 431 S.E.2d at 180. Nor can we overrule a previous case decided by this Court, "unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989); *Musi v. Town of Shallotte*, 200 N.C. App. 379, 383, 684 S.E.2d 892, 896 (2009) (explaining that stare decisis binds courts of the same or lower level). We are undeniably bound by our precedents, even if we do not like the outcomes they produce, and in my view, our precedents hold revival statutes are unconstitutional. Thus, the Revival Window is unconstitutional beyond a reasonable doubt. *See, e.g., Wilkes Cnty. v. Forester*, 204 N.C. 163, 170, 167 S.E. 691, 695 (1933).

## II. Law of the Land Clause & Vested Rights

The Law of the Land Clause of the North Carolina Constitution provides that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Cᴏɴsᴛ. art. I, § 19.

The Law of the Land Clause is similar to the United States Constitution's Due Process Clause, found in the Fourteenth Amendment; both provide procedural and substantive protections. *See Bentley v. N.C. Ins. Guar. Ass'n*, 107 N.C. App. 1, 9, 418

3

S.E.2d 705, 712 (1992) ("'Law of the land' is synonymous with 'due process of law' under the Fourteenth Amendment . . . ."). One of the substantive protections of the Law of the Land Clause is the protection of "vested rights." *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 62, 344 S.E.2d 272, 279 (1986) (stating the vested-rights doctrine "is rooted in the 'due process of law' and the 'law of the land' clauses of the federal and state constitutions"). A vested right is "a right which is otherwise secured, established, and immune from further legal metamorphosis." *Gardner v. Gardner*, 300 N.C. 715, 718–19, 268 S.E.2d 468, 471 (1980).

The Law of the Land Clause protects vested rights against retroactive legislation. *Id.* at 719, 268 S.E.2d at 471 ("'Vested' rights may not be retroactively impaired by statute; a right is 'vested' when it is so far perfected as to permit no statutory interference."); *Armstrong v. Armstrong*, 322 N.C. 396, 402, 368 S.E.2d 595, 598 (1988) (quoting *Godfrey v. State*, 84 Wash. 2d 959, 963, 530 P.2d 630, 632 (1975)) ("A vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law; it *must have become a title*, legal or equitable, *to the present or future enjoyment of property, a demand, or legal exemption from a demand by another*.").

### III. Statutes of Limitations as Vested Rights

Our appellate courts have repeatedly recognized a vested right to rely on a statute-of-limitations defense. *See, e.g., Waldrop v. Hodges*, 230 N.C. 370, 373, 53 S.E.2d 263, 265 (1949) (citing *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695) ("A right

or remedy, once barred by a statute of limitations, may not be revived by an Act of the General Assembly."); *Troy's Stereo Ctr., Inc. v. Hodson*, 39 N.C. App. 591, 595, 251 S.E.2d 673, 675 (1979) ("While the General Assembly may extend at will the time within which a right may be asserted or a remedy invoked so long as it is not already barred by an existing statute, an action already barred by a statute of limitations may not be revived by an act of the legislature."); *Congleton v. Asheboro*, 8 N.C. App. 571, 573, 174 S.E.2d 870, 872 (1970) ("It is equally clear that the statute of limitations operates to vest a defendant with the right to rely on the statute of limitations as a defense."). The root of this right is in *Wilkes*. *See Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695.

### A. *Wilkes County*

In *Wilkes*, the county owned "certificates of tax sales," and the county tried to foreclose on the defendant's real property to satisfy the certificates after the applicable statute of limitations lapsed. *Id.* at 167–68, 167 S.E. at 693–94. The General Assembly, however, passed a law that revived the period in which counties could foreclose on these certificates. *Id.* at 168, 167 S.E. at 694. One of the issues before the North Carolina Supreme Court was whether this attempted revival was constitutional, and the Court held that it was not. *Id.* at 170, 167 S.E. at 695. Indeed, after explicitly recognizing federal caselaw on the subject, the Court said: "Whatever may be the holdings in other jurisdictions, we think this jurisdiction is committed to the rule that an enabling statute to revive a cause of action barred by the statute of

5

limitations is inoperative and of no avail." *Id.* at 170, 167 S.E. at 695.

### 1. *Wilkes* Is Not Limited to Real Property

The Majority concludes that even if *Wilkes* is binding, it only applies to cases involving real property. In my view, *Wilkes* applies to all statutes of limitations, not merely those relating to real property. *See id.* at 170, 167 S.E. at 695. I do not dispute, however, that in *Wilkes*, the General Assembly attempted to revive a claim that affected the defendant's real property. *Id.* at 167–68, 167 S.E. 693–94. And I concede that judicial language must be read in the context of the case. *State v. Jackson*, 353 N.C. 495, 500, 546 S.E.2d 570, 573 (2001). The *Wilkes* holding, then, could plausibly be read to prohibit only revival statutes affecting real property. *See Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695. But our appellate courts have not read *Wilkes* that way, and neither should we. *See, e.g.*, *Waldrop*, 230 N.C. at 373, 53 S.E.2d at 265; *Troy's Stereo*, 39 N.C. App. at 595, 251 S.E.2d at 675; *Congleton*, 8 N.C. App. at 573, 174 S.E.2d at 872.

For example, in *Jewell v. Price*, the plaintiffs sued the defendants for negligence, and the defendants asserted a statute-of-limitations defense. 264 N.C. 459, 460–61, 142 S.E.2d 1, 3 (1965). In analyzing the defense, the Court cited *Wilkes* and said: "If this action was already barred when it was brought . . . it may not be revived by an act of the legislature, although that body may extend at will the time for bringing actions not already barred by an existing statute." *Id.* at 461, 142 S.E.2d at 3. In other words, *Jewell* shows that the prohibition of revival statutes applies to

tort claims, too. *See id.* at 461, 142 S.E.2d at 3.

Therefore, *Jewell* illustrates that our Supreme Court has not limited the application of its holding in *Wilkes* to vested rights in real property. *See id.* at 461, 142 S.E.2d at 3. *Wilkes* established a broad vested right against revival legislation; real property was merely the vessel that brought the issue before the Court. *See id.* at 461, 142 S.E.2d at 3; *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695.

## 2. *Wilkes* Applied the Law of the Land Clause

The Majority also suggests that we are not bound by *Wilkes* because the *Wilkes* Court did not explicitly cite the Law of the Land Clause. I disagree. Granted, the Court in *Wilkes* did not cite the Law of the Land Clause, *see Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695, but deductive reasoning, however, shows the Court was indeed interpreting the Law of the Land Clause.

The *Wilkes* Court repeatedly analyzed the term "vested right." *See id.* at 168–70, 167 S.E. at 693–95. Our jurisprudence shows that the vested-rights doctrine is nested in either the Law of the Land Clause or the federal Due Process Clause. *See Godfrey*, 317 N.C. at 62, 344 S.E.2d 272 at 279. It is not found anywhere else.

The *Wilkes* Court was necessarily interpreting the Law of the Land Clause because the Court expressly stated it was *not* interpreting federal cases or the Due Process Clause. *See Wilkes Cnty.*, 204 N.C. at 168–70, 167 S.E. at 693–95. Rather, the *Wilkes* Court stated: "*Whatever may be the holdings in other jurisdictions*, we think *this jurisdiction* is committed to the rule that an enabling statute to revive a

7

cause of action barred by the statute of limitations is inoperative and of no avail." *Id.* at 170, 167 S.E. at 695 (emphasis added).

Because the North Carolina Supreme Court is the final arbiter of the Law of the Land Clause—"[w]hatever may be the holdings in other jurisdictions"—we are bound by *Wilkes* and its Law of the Land interpretation. *See id.* at 170, 167 S.E. at 695. *Wilkes* is no less binding because the Court did not explicitly cite the constitutional clause in question.

**B. Dicta Discussion**

The Majority also dismisses *Wilkes* and its progeny as spouting dicta. The Majority, however, casts its dicta net too wide. Because I believe *Wilkes*, coupled with *Jewell*, controls this case, I will only address the binding nature of those two decisions. I will discuss why their revival-statute discussions are not dicta, and thus why they control this case.

Dicta is language "not essential to a decision." *State v. Cope*, 240 N.C. 244, 246, 81 S.E.2d 773, 776 (1954). In other words, dicta is "not determinative of the issue before [a court]." *Jackson*, 353 N.C. at 500, 546 S.E.2d at 573. Only parties that have standing in a live case or controversy, however, can get issues before *federal* courts. *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849, 857 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

But unlike federal courts, our state Supreme Court is not bound to live cases or controversies; it can issue advisory opinions. *See e.g.*, *In re Separation of Powers*, 305 N.C. 767, 775, 295 S.E.2d 589, 594 (1982) (opining, in an advisory opinion, that statutes authorizing a joint legislative commission to make budget decisions exceeded legislative power and interfered with the governor's duty to administer the budget); *Cooper v. Berger*, 376 N.C. 22, 29–30, 852 S.E.2d 46, 54 (2020) (citing *In re Separation of Powers*, 305 N.C. at 772, 295 S.E.2d at 592); *State ex rel. Martin v. Melott*, 320 N.C. 518, 523, 359 S.E.2d 783, 787 (1987) (citing *In re Separation of Powers,* 305 N.C. at 774, 295 S.E.2d at 593). So naturally, our Supreme Court opinions can address a wider range of issues, and so long as Court language helps resolve an "issue before [it]," the language is not dicta. *See Jackson*, 353 N.C. at 500, 546 S.E.2d at 573.

The *Wilkes* Court explicitly addressed two issues: "(1) The first question involved: Is plaintiff barred by the eighteen months statute of limitations, which is properly pleaded, where it attempted to foreclose certain certificates of tax sales?" *Wilkes Cnty.*, 204 N.C. at 167, 167 S.E. at 693. And "(2) [t]he second question involved: Public Laws, 1931, chap. 260, sec. 3; at p. 320." *Id*. at 168, 167 S.E. at 694. In other words, the Court explicitly addressed (1) whether Wilkes County was time barred, and (2) whether the challenged revival provision was constitutional. *Id*. at 167–68, 167 S.E. at 693–94. The Court held the county's foreclosure effort was time barred, and the revival provision was unconstitutional. *Id*. at 167–70, 167 S.E. at 693–95.

The Majority thinks the Court's answer to the second question was dicta because it was unnecessary to answer the first question. If the first question was the only one presented to the Court, I would agree. But it was not, and I do not. True, if *Wilkes* was heard in federal court, the plaintiff may have lacked standing to present the second question. But *Wilkes* was not in federal court, and our Supreme Court does not require live cases or controversies. *See In re Separation of Powers*, 305 N.C. at 775, 295 S.E.2d at 594. Because the constitutionality of the revival provision was expressly presented to the *Wilkes* Court, *see Wilkes Cnty.*, 204 N.C. at 167, 167 S.E. at 694, the Court properly decided its constitutionality, *see Jackson*, 353 N.C. at 500, 546 S.E.2d at 573. In other words—*Wilkes'* revival-provision language was not dicta.

In *Jewell*, "[t]he critical question [was] whether plaintiffs have offered any evidence tending to show that they instituted this action within three years from the date it accrued." *Jewell*, 264 N.C. at 460–61, 142 S.E.2d at 3. In other words, the "critical question" was whether the case was barred by a statute of limitations. *See id*. at 460–61, 142 S.E.2d at 3. To answer that question, the *Jewell* Court correctly held that a revamped statute of limitations, passed after the case commenced, could not revive a lapsed negligence claim. *Id*. at 461–62, 142 S.E.2d at 3–4. Such a determination was "essential to [the] decision," *see Cope*, 240 N.C. at 246, 81 S.E.2d at 776, because if the lapsed negligence claim could have been revived, the statute-of-limitations defense would have failed, *Jewell*, 264 N.C. at 461, 142 S.E.2d at 3. But the lapsed claim could not be revived, and the defense did not fail. *Id*. at 461, 142

10

S.E.2d at 3. Therefore, the revival discussion in *Jewell* was necessary, not dicta. *See Cope*, 240 N.C. at 246, 81 S.E.2d at 776.

In sum, I do not read the applicable language from *Wilkes* and *Jewell* as dicta. *See id.* at 246, 81 S.E.2d at 776. Thus, because *Wilkes* established a vested right against revival statutes, *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695, and because *Jewell* established that *Wilkes* is not limited to real-property rights, *Jewell*, 264 N.C. at 461, 142 S.E.2d at 3, we must apply those principles to this case, *see Musi*, 200 N.C. App. at 383, 684 S.E.2d at 896.

### C. *Hinton*

The Majority relies heavily on *Hinton v. Hinton*, 61 N.C. 410 (1868), and the Majority believes *Hinton* controls this case. I disagree with the Majority, but *Hinton* certainly deserves discussion.

In *Hinton*, there was a six-month statute of limitations for widows to exercise their common-law rights of dower. *Id.* at 413. In 1863, because of the Civil War, the General Assembly decided to retroactively toll the running of this statute from May 1861. *Id.* at 414. As to whether the General Assembly could do so under the North Carolina Constitution, the *Hinton* Court answered: "The power of the Legislature to do so is unquestionable." *Id.* at 415. One could read *Hinton* merely to hold this: The legislature can *toll* a statute, rather than revive lapsed claims. We have acknowledged as much. *See Troy's Stereo*, 39 N.C. App. at 595, 251 S.E.2d at 675 ("[T]he General Assembly may extend at will the time within which a right may be

11

asserted . . . .").  But it is hard to square that reading with the following language

from *Hinton,* which illustrates the Court's logic:

> Suppose a simple contract debt created in 1859.  In 1862
> the right of action was barred by the general statute of
> limitations, which did not *extinguish the debt*, but simply
> barred the right of action.  Then comes the act of 1863,
> providing that the time from 20 May, 1861, shall not be
> counted.  Can the debtor object that this deprives him of a
> vested right?  Surely not.  It only takes from him the
> privilege of claiming the benefit of a former statute, the
> operation of which is for a season suspended.

*Hinton*, 61 N.C. at 415–16.

I tend to agree with the Majority's understanding of *Hinton*: Contrary to

*Wilkes*, the *Hinton* Court held that a statute-of-limitations defense is not a vested

right.

### D. Reconciling *Wilkes* & *Hinton*

The Majority tries to reconcile *Hinton* and *Wilkes* in several ways—by limiting

*Wilkes* to real-property cases, dismissing *Wilkes* as vague, and dismissing *Wilkes* as

dicta.  As discussed above, I disagree with the Majority on those fronts, but I agree

with the Majority's reading of *Hinton*.  Thus, because I agree with the Majority on

*Hinton*, and because I read *Wilkes* to authoritatively hold the opposite of *Hinton*, I

cannot read the two in harmony.  My reconciliation is simpler than the Majority's: In

my view, *Wilkes* overruled *Hinton*.

The North Carolina Supreme Court often overrules cases by implication; it

need not do so explicitly.  *See, e.g.*, *McAuley v. N.C. A&T State Univ.*, 383 N.C. 343,

12

355, 881 S.E.2d 141, 149 (2022) (Barringer, J., dissenting) (noting that the majority opinion "refuse[d] to follow . . . [ninety] years of this Court's precedent" established in *Wray v. Carolina Cotton & Woolen Mills Co.*, 205 N.C. 782, 783, 172 S.E. 487, 488 (1934)); *State v. Styles*, 362 N.C. 412, 415–16, 665 S.E.2d 438, 440–41 (2008) (abrogating *State v. Ivey*, 360 N.C. 562, 633 S.E.2d 459 (2006)).

I read *Hinton* to hold that the General Assembly can revive lapsed claims, *Hinton*, 61 N.C. at 415, and I read *Wilkes* to hold that the General Assembly cannot revive lapsed claims, *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695. These are opposite conclusions. The Court decided *Hinton* in 1868. *See Hinton*, 61 N.C. at 410. And the Court decided *Wilkes* in 1933. *See Wilkes Cnty.*, 204 N.C. at 163, 167 S.E. at 691. Thus, our state Supreme Court overruled *Hinton* when it decided *Wilkes*. *See Styles*, 362 N.C. at 415–16, 665 S.E.2d at 440–41; *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695. Further, our subsequent caselaw follows *Wilkes*, not *Hinton*; this supports the proposition that *Wilkes* overruled *Hinton*. *See, e.g.*, *Waldrop*, 230 N.C. at 373, 53 S.E.2d at 265.

Therefore, *Wilkes* controls this case, not *Hinton*. This follows from the two cases themselves and from the subsequent caselaw. *See Hinton*, 61 N.C. at 415; *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695; *Waldrop*, 230 N.C. at 373, 53 S.E.2d at 265. Accordingly, I would follow *Wilkes* and affirm the majority decision of the three-judge panel below.

### IV.   Tiers of Scrutiny

13

The Majority also holds that, even if *Wilkes* applies to the Revival Window, the window is constitutional because it passes both the relaxed rational-basis test and the exacting strict-scrutiny test. I disagree with the Majority's testing premise: I do not think we should analyze this case through a tiers-of-scrutiny scheme.

I acknowledge that we analyze certain Law of the Land cases under a tiers-of-scrutiny framework. But those cases involve "fundamental rights." *See, e.g., Affordable Care, Inc. v. N.C. State Bd. of Dental Examiners*, 153 N.C. App. 527, 535, 571 S.E.2d 52, 59 (2002) (stating that fundamental rights are subject to strict scrutiny); *Bunch v. Britton*, 253 N.C. App. 659, 674, 802 S.E.2d 462, 473–74 (2017) (discussing the tiers-of-scrutiny framework for fundamental rights).

Under our jurisprudence, similar to our federal counterpart, fundamental rights include those enumerated in the North Carolina Constitution. *Hoke Cnty. Bd. of Educ. v. State*, 382 N.C. 386, 432, 879 S.E.2d 193, 222–23 (2022) (discussing, among others, the fundamental rights to free elections, free speech, and education). We also find fundamental rights beyond the text of our state's Constitution. *Comer v. Ammons*, 135 N.C. App. 531, 539, 522 S.E.2d 77, 82 (1999) ("A fundamental right is a right explicitly *or implicitly* guaranteed to individuals by the United States Constitution or a state constitution.") (emphasis added). Typically, these implied fundamental rights are nestled in the Law of the Land Clause. *See, e.g., N.C. Dep't of Transp. v. Rowe*, 353 N.C. 671, 676, 549 S.E.2d 203, 208 (2001) (finding a right to "just compensation" in the Law of the Land Clause).

14

Vested rights, however, are distinct. "Without question, vested rights of action are property, just as tangible things are property." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 176, 594 S.E.2d 1, 12 (2004) (citing *Duckworth v. Mull*, 143 N.C. 461, 466–67, 55 S.E. 850, 852 (1906). Like the fundamental rights mentioned in tiered-scrutiny cases, vested rights are grounded in due process. *Godfrey*, 317 N.C. at 62, 344 S.E.2d at 279. But vested rights are paramount—protected from *any* legislative attack. *See, e.g.*, *See Lester Bros., Inc. v. Pope Realty & Ins. Co.*, 250 N.C. 565, 568, 109 S.E.2d 263, 266 (1959) ("[A] retrospective statute, affecting or changing vested rights, is founded on unconstitutional principles and consequently void."). Fundamental rights, on the other hand, can be taken by legislation—so long as the legislation passes "strict scrutiny." *See Affordable Care*, 153 N.C. App. at 535, 571 S.E.2d at 59.

It is admittedly difficult to mesh the vested-rights doctrine with the fundamental-rights doctrine. But the idea of vested rights predates fundamental rights, and in my reading of the cases, vested rights are a special species of fundamental rights. In other words, all vested rights are fundamental, but not all fundamental rights are vested. Vested rights are treated like property, *Rhyne*, 358 N.C. at 176, 594 S.E.2d at 12, and they are so "fundamental" that *no* legislation can take them away, *Lester Bros.*, 250 N.C. at 568, 109 S.E.2d at 266.

Adopting the Majority's view of this area would erase our vested-rights doctrine. Under the Majority's approach, fundamental rights would swallow vested rights, and our vested-rights doctrine would be consumed by the adopted federal

framework. *See Affordable Care, Inc.*, 153 N.C. App. at 535, 571 S.E.2d at 59. But our vested-rights doctrine is distinct—predating any tiered scrutiny approach—and our courts have developed the doctrine for decades. *See, e.g., Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695; *Lester Bros.*, 250 N.C. at 568, 109 S.E.2d at 266.

The vested-rights doctrine is ill-suited for the tiers-of-scrutiny approach. Indeed, if vested, a right is *beyond* legislative encroachment; if not vested, a right is only as protected as the level of scrutiny allows. *See Lester Bros.*, 250 N.C. at 568, 109 S.E.2d at 266; *Gardner*, 300 N.C. at 718–19, 268 S.E.2d at 471 (stating that a vested right is "a right which is otherwise secured, established, and *immune from further legal metamorphosis*") (emphasis added).

The issue before us is a state constitutional issue—not a federal one, and the North Carolina Supreme Court is the final arbiter of the North Carolina Constitution. If our state Supreme Court decides to lockstep with the federal Supreme Court and the Due Process Clause, then so be it. But concerning vested rights, our Supreme Court has not done so. *See Lester Bros.*, 250 N.C. at 568, 109 S.E.2d at 266; *Gardner*, 300 N.C. 715, 719, 268 S.E.2d at 471 ("'Vested' rights may not be retroactively impaired by statute; a right is 'vested' when it is so far perfected as to permit *no statutory interference.*") (emphasis added).

Until our state Supreme Court holds that vested rights are merely fundamental and subject to the federal tiers-of-scrutiny approach, we should apply the decisive vested-rights doctrine: If legislation violates a vested right, the

16

legislation is void. *See Lester Bros.*, 250 N.C. at 568, 109 S.E.2d at 266. Thus, the "interests" and "tailoring" within the tiers-of-scrutiny approach are irrelevant to vested rights. Because I think the Revival Window violates a vested right, I think the Revival Window is void. Therefore, I would affirm the panel below.

## V.    Conclusion

The Majority thinks *Wilkes* should be overruled, and this Court has the authority to do so. Given its lack of support from the text of our state Constitution, perhaps *Wilkes* should be overruled. *See Harper v. Hall*, ___ N.C. ___, 886 S.E.2d 393 (2023). Although, in my view, the effects of doing so would extend far beyond this case and would carry unintended consequences and undermine a hallmark of our justice system–stability in our jurisprudence.

Regardless, whether revival statutes are good policy is not for us to decide. We cannot overrule *Wilkes,* its progeny, or our vested-rights doctrine. Only our state Supreme Court can. *See In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37; *Musi*, 200 N.C. App. at 383, 684 S.E.2d at 896. The *Wilkes* Court was clear: "Whatever may be the holdings in other jurisdictions, we think this jurisdiction is committed to the rule that an enabling statute to revive a cause of action barred by the statute of limitations is inoperative and of no avail." *Wilkes Cnty.*, 204 N.C. at 170, 167 S.E. at 695. Because *Wilkes* and its progeny control this case, the Revival Window is "unconstitutional beyond reasonable doubt." *State ex rel. McCrory*, 368 N.C. at 635, 781 S.E.2d at 250. Therefore, I would affirm the majority of the panel below, and I

17

respectfully dissent.